## SELAH MERRILL *against* NEHEMIAH MEACHUM.

MOTION for a new trial.

This was an action of *disseisin* for a certain parcel of land in *New-Hartford.*

On the trial of this cause, before the Superior Court, the plaintiff claimed title to the land in question, by virtue of the levy of an execution, issued upon a judgment in his favour, against one *Eliphalet Ensign.* The levy was admitted to have been regularly made, and completed.

The defendant claimed the right to hold the land, by virtue of a deed from *Ensign,* dated the 13th day of *February,* 1797: And it was admitted, that the deed was duly executed, and that it contained the land in dispute, together with other lands. It was also admitted, that *Ensign* was the lawful proprietor of the land, at the time of the conveyance; and that the defendant had been in possession, by virtue of his deed, since the summer of 1797.

The plaintiff claimed, that the deed was made and executed by *Ensign,* with intent to defraud his creditors: And to prove this, offered evidence to shew, that, without the knowledge of the defendant, *Ensign* procured the deed to be made and executed, in great haste, and caused it to be carried immediately, by one *Douglass,* who was a subscribing witness, to the town clerk's office, for record.

The plaintiff also offered *Douglass,* as a witness, to prove, that at the time of the execution of the deed, *Ensign* declared to him, " that one *Hatch* was about to attach the land, but he intended to let him know, that he would be quick enough

A., without the knowledge or assent of *B.,* executed to him, a deed of certain lands, and caused it to be immediately lodged at the town clerk's office, for record; *A.,* at the same time, declaring, " that *C.,* a creditor, was about to attach his land, and that he intended to let him know, that he would be quick enough for him." *B.,* afterwards, when the transaction came to his knowledge, agreed with *A.* to accept the grant, as to a part of the lands contained in the deed, paid a valuable consideration therefor, went into possession thereof, and reconveyed to *A.* the residue; in an action of *disseisin* brought by a subsequent attaching creditor of *A.* against *B.,* for the land by him so purchased, it was held, that the declarations of *A.,* made at the time of the original conveyance, might be proved, being a part of the *res gesta.*

Held also, that the deed of *A.* was void, at its inception, as against his creditors.

Held also, that the deed was void, not only as against creditors, who were such, at the time of the conveyance, but also, as against subsequent creditors.

Held also, that no subsequent act of the parties, could render the deed valid against the claims of third persons.

for him;" and also other declarations of *Ensign*, tending to shew, that the deed was executed for the purpose of securing the land against the attachment of his creditors.

The defendant objected to the introduction of any evidence, relating to the admissions of *Ensign*, on the ground, that they were the declarations of the grantor, made in the absence, and without the knowledge of the grantee ; and that he was estopped by the covenants in his deed. But the court overruled the objection, and admitted the evidence.

The defendant, for the purpose of shewing, that the deed of *Ensign* was not fraudulent, introduced evidence to prove, that on the 5th of *June*, 1797, in pursuance of an agreement between him and *Ensign*, he became the *bona fide* purchaser of the demanded premises, by the payment of a valuable consideration therefor ; and that he did then reconvey to *Ensign*, the residue of the lands described in the original deed.

The court, in their charge to the jury, instructed them, that if they should find, from the evidence, that the deed from *Ensign* to the defendant, at the time of its execution, and delivery at the town clerk's office, was made by the grantor, with intent to defraud his creditors, their verdict must be for the plaintiff ; and that neither the want of the defendant's knowledge in relation to the transaction, at the time of it, nor any thing done by him afterwards, when he came to the knowledge of the deed, could alter, or vary his rights derived therefrom. And the court, also, further instructed the jury, that if they should find, that the deed was made with intent to defraud the creditors of *Ensign*, it must, in point of law, be considered as fraudulent, and void, against all his subsequent creditors, as well as those who were such, at the time of the conveyance. The jury returned their verdict for the plaintiff.

The defendant moved for a new trial, on the ground, that the court admitted improper evidence ; and also, on the ground of a misdirection. The questions of law arising upon the motion, were reserved for the opinion of the nine Judges.

*Benedict*, in support of the motion.

Two questions only, will be made in this case.   1. Whether the court ought to have received evidence of the declarations of *Ensign*, the grantor, in the absence of the grantee, for the purpose of shewing, that the deed was executed with a fraudulent intent ?

The objection to this evidence, is founded on the absence of the grantee, at the time of the transaction, and his want of knowledge respecting it.   The declarations of a grantor cannot be admitted to defeat the grant, in the absence of the grantee.   This proposition is too plain to require comment.

Besides, the declarations of *Ensign*, were not a part of the *res gesta*.   So much as did constitute a part of the *res gesta*, was proper.   The acts performed speak for themselves. They may be proved to the jury, as such, and will have their influence ; but the declarations of the grantor, under the circumstances, could not be proved.

2. Whether, if a deed be made, with a view to defraud creditors, it is not necessary, that the grantee should be a party to the fraudulent transaction ?

I consider the court as having decided, that this is not necessary.   But this cannot be law.   The motion states, that when the grantee came to the knowledge of this transaction, he became a *bona fide* purchaser, for that portion of the land now in dispute, and released the residue.   The assent of the grantee is necessary to the validity of a conveyance.   Such assent will be presumed, it is true, but the party may always dissent.   It is claimed, from the acts of the parties, that such dissent was made in the present case.   The principles contended for, in this case, are sustained by the decision in *Beach* and *Catlin, 4 Day's Rep.* 284.

*Gould* and *Bacon*, contra.

1. It is claimed by the counsel, in support of the motion, that the declarations of *Ensign*, ought not to have been received in evidence on the trial.   These declarations were proper, to shew the invalidity of the deed.   It is an universal rule, that where the acts of a person may be proved, his

declarations accompanying such acts, may also be proved. The declarations of *Ensign* were a part of the *res gesta* ; the evidence, therefore, was properly admitted. *Swift's Ev.* 130. 1 *Mac Nal.* 373. These declarations were facts, and might be proved as such.

Besides, these declarations were made by the agent of *Meachum :* For the acts of *Ensign* became the acts of *Meachum*, when he accepted the grant of the land under the original deed. *Meachum* claims, even now, by virtue of that deed. Whatever an agent says, at the time of a transaction, in relation to his agency, is the declaration of the principal. It would seem, also, to be immaterial, whether the grantee was present, or not, at the time the declarations were made, provided he afterwards adopts the acts of the grantor.

2. A voluntary conveyance is, *per se*, fraudulent, as it respects creditors. And if a deed be void, at its inception, or at the time when it takes effect, it must for ever remain so. When did the deed from *Ensign* to *Meachum*, take effect ? Undoubtedly, at the time when it was delivered at the town clerk's office, for record. This point is fully established in *Halluck* v. *Bush*, 2 *Root's Rep.* 26. If the deed was good at any time, it was good at its inception. If it was fraudulent at its inception, the grantee can do nothing, when he comes to the knowledge of the transaction, which will take the case out of the statute. *Cadogan* v. *Kennett, Cowp.* 434. [*Trumbull*, J. Does it appear, from the motion, that *Meachum* had knowledge of the fraud, or only of the deed ?] He had knowledge only of the deed.

But it is said, that the defendant claims title by virtue of an agreement, subsequent to the execution of the deed. If he abandons his title by the deed, he can have no title by a subsequent parol agreement. His whole claim rests upon the state of the case, when the original conveyance was made. If the deed was fraudulent then, it is fraudulent now. No agreement of the parties can purge the fraud.

BALDWIN, J. The first point presented by this record, is, the admissibility of the declarations of *Ensign*, the grantor, made at the time he executed the deed.

*Ensign* is not a party on this record, and being the grantor, he is not an admissible witness. That he executed the deed in question, is admitted. The character of that transaction, whether done fraudulently, with a view to defeat the claims of creditors, or not, is a question of fact. Such a fact may often be proved from other sources, but seldom more clearly, than by the declarations of the grantor accompanying the transfer. They constitute an essential part of the facts necessary to understand the transaction. Declarations which are part of the *res gesta*, and accompanying a transaction, proper to be proved, are always admitted. This is done even in favour of a party. Neither the object of a tender, nor an escrow, can be proved in any other way. This question is within the rule governing an extensive class of cases, in which the declarations of a person, at the time he does an act, are admitted as part of the facts, necessarily constituting the transaction. I am of opinion, that the declarations of *Ensign* were of this character, and that proof of them was proper

From the charge, several questions are raised.

1. Whether, from the facts disclosed, the deed in question, was, at any time, fraudulent and void, as to creditors? And if so,

2. Whether it could be made good by any subsequent act of the parties?

3. Whether a fraudulent deed is void, as against subsequent creditors?

As the last question was abandoned in the argument, and has been repeatedly decided in favour of such creditor, and lately recognized by this court, in the case of *Beach* v. *Catlin*, 4 *Day's Rep.* 284. it appears to me unnecessary to discuss it.

The other questions are presented with more confidence ; but I think the decision of the court on them, equally correct.

If the facts alleged in this case, are found to be true, it is apparent, that at the time of the execution and delivery of this deed, there was an intention, on the part of the grantor, thereby to defraud his creditors. This was declared by him,

VOL. V.                    T t

and was manifest from the transaction. The deed was made out and delivered to the town clerk, without a previous contract, or even the knowledge of the grantee. By that delivery, it took effect; for though it is necessary to give a deed validity, that the grantee should assent to take, yet the law will presume assent, until the contrary appears; for, as between the parties, the conveyance was good, and it cannot remain the doubtful subject of future contingencies, as to creditors. Whether this conveyance was voluntary, and altogether without consideration, or the grantee was a creditor to the amount of what he afterwards agreed to retain, or a subsequent purchaser of a part, can make no difference in principle; since, at the time of the conveyance, there was neither an application, nor an adequate price; nor was the transaction then *bona fide*, or on good consideration. The conveyance was, therefore, clearly within the statute, unprotected by the saving clause in the exception. If the land had been attached the next day after the conveyance, or at any time before the subsequent contract, I think no question could have been made. The estate was, then, for a time, still open to the claims of creditors, and the deed as to them, void.

Can it be made good by a subsequent act of the parties?

A fair, *bona fide* purchaser, for good consideration, of an estate, conveyed by the grantor, with a fraudulent intent, on his part, to defeat his creditors of a recovery of their debts, is undoubtedly protected in his purchase, by the exception in our statute. But if a conveyance is so made, as to be void by force of the statute, and is unprotected by the saving clause, I am clearly of opinion, it can never be made valid, by any subsequent act, or contract. A contract merely voidable, may be made good, by subsequent acts. If absolutely void, it has no basis for future negotiation.

In this case, the defendant, when conscious, that he could not, *bona fide*, retain the whole, relinquished a part, but has not taken a new conveyance. His title to the remainder reserved, still rests on the baseless foundation of a conveyance, in its inception, utterly void by statute.

It appears to me, that this question was substantially decided, by this court, in the case of *Preston* v. *Crofut*. (*a*) The principle guiding that decision, was, that a conveyance void by the statute, could never be made good : That it could never be the basis of even a subsequent *bona fide* conveyance ; but must, necessarily, always remain void. The reasons were so recently and so fully given, in that case, that I do not think it necessary to enlarge.

I am of opinion, that the court was correct on all the points, and that a new trial is not advisable.

MITCHELL, Ch. J., SWIFT, TRUMBULL, and BRAINARD, Js. concurred in the opinion expressed by BALDWIN, J.

EDMOND, J. gave no opinion.

INGERSOLL, J. On the best consideration of this case, which I am able to give it, I am of opinion, that there ought to be a new trial : Not indeed, on the ground, that the court received evidence of the declarations of *Ensign*, the grantor, accompanying the deed, as to his views in giving it. This evidence, in my opinion, was very properly received. But my opinion rests on the ground, that the deed, so far as respected the grantee, was not fraudulent.

It is an agreed point, that whatever views a grantor may have, in making a conveyance, yet if it be *bona fide*, on the part of the grantee ; that is, if he be a purchaser, paying a valuable consideration, without any notice of the fraud ; such conveyance, as to him, is not fraudulent. He shall hold the property comprised in the deed, clear of all demands of the creditors of the grantor. This, then, being the principle, it follows of course, that if *Meachum* had consented to take all the land contained in the deed, and to pay a valuable consideration for it ; or being a creditor to the amount of the value of the whole, had taken the whole in satisfaction of his debt ; in either of these cases, the conveyance would

(*a*) Vid. 1 *Conn. Rep.* 527. in nota.

Nov. 1812.

MERRILL
*v.*
MEACHUM.

have been good. He would then have been a *bona fide* purchaser.

But it is said, as he consented to take a part of the land only, though he paid a valuable consideration for such part, and also immediately conveyed back to *Ensign* what of the land, he did not want; yet as he let the original conveyance to him stand, this became, at once, a fraudulent conveyance.

It is said, further, that the decision of this court, in the case of *Preston* and *Crofut*, (*b*) is directly in point. This decision, it is well known, was, that a fraudulent grantee never can make a good title to the land comprised in the fraudulent deed, to any *bona fide* purchaser, against the creditors of his grantor. A fraudulent deed, I agree, by this decision, never can be purged of the fraud. Taking this decision for law, I apprehend, however, that it does not affect the present question. In other words, I do not consider it, as a case in point. To make it directly so, *Meachum* must have concurred with the grantor, in the fraud: For so was that case; both the grantor and grantee concurred in the fraud. In the present case, *Meachum* never can be considered as a fraudulent grantee, but on the ground, that he held a part of the land comprised in the deed, a certain time, as a trustee to *Ensign*. To say that such trustee, without any intentional fraud on his part, is a fraudulent grantee, is carrying the principle of fraud a great way indeed. According to this principle, as far as I can see, whenever, by mistake, more lands are conveyed to a grantee, than were purchased by him, the deed will be considered as fraudulent: At any rate, it will be so considered, if the deed be made out before it is accepted by the grantee; that is to say, if it be made out and brought to him; and when brought to him, the mistake is discovered by the grantor and grantee, and is not immediately rectified. If, I say, the mistake be not rectified on the spot, from hurry of business, or from any other cause, and any time elapses before a reconveyance of the surplus over and above the purchase money, be made by the grantee, the deed must be considered as fraudulent.

(*b*) Vid. 1 *Conn. Rep.* 527. in nota.

The deed, according to the principle contended for, must not only be fraudulent, while any part of the land is held in trust for the grantor, but ever after. There can be no setting it right, however honest the parties may be, but by making entirely new conveyances. The grantee must convey the whole land back to the grantor, and then he must convey to the grantee the exact quantity, that he purchased. But to make the case put, of a deed by mistake, comprising more land than was intended to be sold, to compare with the present case ; the parties, when the mistake is discovered, must immediately rectify it, by the grantee's reconveying the overplus land. If, in the case put, the grantee would be considered as a fraudulent grantee, and the conveyance void, as to creditors, the conveyance from *Ensign* to *Meachum,* was fraudulent and void : If, however, in the former case, the conveyance would not be fraudulent, neither would it be so, in the latter. They both, as it strikes me, stand on precisely the same ground. The truth is, in neither case is there any fraud, intentional or legal. It will not be pretended, that there was any intentional fraud, in the case under consideration, on the part of the grantee. Nor, as I apprehend, was there any legal fraud, let the principle be carried ever so far ; because there was no holding for any time whatever, as a trustee to the grantor.

The taking the deed by *Meachum* from *Ensign*, and reconveying to him such part, as was not purchased, was all one transaction. The first deed was inchoate, and no title passed by it, until the whole business was completed. There was no instant of time, that a creditor could have stepped in, and seized the property in the hands of *Meachum*, as a trustee to *Ensign.*

It has been contended, that the land might be attached as the property of *Ensign*, after he had conveyed to *Meachum ;* that is, after he had made out the deed, and before it was accepted by *Meachum.* Thence, it was inferred, (at least, by the counsel who argued the cause,) that such attaching and holding by the creditor, must be on the ground, that the conveyance was fraudulent. That it might be so attached and

held, I agree. But I do not agree, that it could be held by the creditor, on account of any fraud in the transaction. It could be held, for the same reason, that it could be held, if given on the best consideration in the world. It could be held, because the land would remain the property of *Ensign*, until the deed was accepted by *Meachum :* For, until such acceptance, there is no transfer of the property ; no conveyance, in any sense of the word.

In short, there can be no fraudulent conveyance, until there be an acceptance by the grantee. When lands are taken, as being fraudulently conveyed, they must be taken as having been conveyed, and the title transferred, so far as respects the grantor and grantee.

Upon the whole, it is my opinion, that *Meachum* was a *bona fide* purchaser of the land in question, and never was a fraudulent grantee, in virtue of the conveyance made to him, either by holding the land, to cheat the creditors of *Ensign,* or in any sense, as a trustee to him ; and therefore, I think that a new trial ought to be advised.

SMITH, J. It appears from the motion, that the plaintiff claimed, on the trial, that the deed from *Ensign* to *Meachum,* was made with a view to defraud his creditors, and with that view, was lodged with the town clerk, without the knowledge or privity of *Meachum :* And having introduced proof to this point, the defendant introduced evidence to prove, that afterwards, when the deed came to his knowledge, he made a *bona fide* contract, for a part of the land contained in the deed, and paid a full consideration for it, without any knowledge of the fraudulent intent of *Ensign ;* and that he immediately reconveyed all the land contained in the deed, which he did not so purchase.

Upon this state of the case, the court charged the jury, that if they should find, that at the time when the deed was made, and lodged at the town clerk's office, it was intended by *Ensign,* to defraud his creditors, they must find for the plaintiff, although the defendant had no knowledge of the transaction, at the time ; and that nothing done by the de-

fendant, afterwards, when the same came to his knowledge, could alter or vary his rights.

To avoid a conveyance, on the ground, that it was made to defraud creditors, there must be a fraudulent intent, on the part of the grantee, as well as the grantor.

The great question, in the present case, is, then, whether we are authorised to impute the fraudulent intent of the grantor, to the grantee, by way of presumption, so that it can never be removed by opposite testimony ?

Although the law will presume the assent of a grantee, to a *bona fide* deed, I lay it down as an undeniable principle, that such assent cannot be presumed, in case of a corrupt deed. If I am correct in this, the case presents a subject clear of all difficulty.

The deed is indeed void, though not on the ground of fraud ; yet, it is so, for want of one essential requisite, *viz.* the assent of the grantor ; as much so, as if it had never been delivered or recorded at all ; and if creditors take the land under these circumstances, their title is as good, as if nothing had been done : But it follows, also, that whenever the contract is assented to, by any agreement which is free from fraud, the contract becomes complete, and the deed valid.

In short, I consider this case as standing on the same ground, as though *Ensign* had made out the deed with a fraudulent intent, and kept it in his pocket till he saw *Meachum*, when they made a fair *bona fide* contract for a part of the land, without any knowledge, on the part of *Meachum*, of the fraudulent intent of *Ensign ;* and instead of making out a new deed, *Meachum* receives the one already made, and gives back a deed of the land which he did not purchase. I agree, most fully, to the remark, that when once a contract is fraudulent, it must always remain so ; and that nothing done by the parties can make it good. But I can never agree, that because a contract is once incomplete, and void, that the parties can never afterwards complete it ; provided no creditor has taken the land in the mean time.

But suppose, we admit, that the law will presume the assent of the grantee, for the purpose of preserving the convey-

ance ; and here let me admit fully, that he is presumed to assent to all the fraudulent views of the grantor ; still, this is a mere presumption of law, for the purpose of preserving the conveyance, till it came to the knowledge of the grantee ; and when the deed first comes to his knowledge, the grantee has the same power over it, as though there had been no delivery at the office of the town clerk : And whatever he then does, has relation back to the date of the deed. If he dissents to the whole contract, it is as though nothing had been done. If he assents to the whole, he takes all the consequences of it, as though he agreed at the time. If he assents to receive the deed, on a *bona fide* agreement, but dissents to all the fraud originally introduced by the grantor, this is the same thing, as though such had been the agreement originally.

In this case, the claim was, that *Meachum* made a fair *bona fide* contract for the land, and paid a full consideration for it, without the knowledge, that a fraud was ever intended. Will any one seriously contend, that this presumed assent continues any longer, than the time when the parties come together, and make an actual agreement on the subject ? Will it be said, that the law will presume an assent, after an actual dissent ? Where there is an express assent, such assent must continue ; and in this point of view, I agree most fully, that once a fraud, always a fraud. But in respect to an implied assent, it is far otherwise. In this case, there certainly may be an assent at one time, and a dissent at another ; and if the presumed assent will make a conveyance fraudulent, the actual dissent must surely purge it.

Let us see what this grantee has done, which ought to subject him to so heavy a penalty, as the loss of his land. Has he been the means of placing any of the property of the grantor out of the reach of his creditors ? It is not pretended, but that the consideration he paid was as much within their reach, and to as large an amount, as the land he purchased. Did he, at any one time, design to aid the grantor in defrauding his creditors ? This is not pretended. But it is said, that the grantor, at a certain time, did intend to defraud his

creditors; and this is the whole amount of the complaint. It cannot escape notice, however, that this fraudulent intention of the grantor, must be entirely impotent, without the concurrence of the grantee: And it gains no strength from any presumed assent, provided the grantee did actually dissent. It can do the creditors no injury, that the law will presume a grantee dishonest; provided he be, in truth and reality, honest. Whatever may be said about presumptions and implications, they cannot make a man a party to a fraudulent conveyance, against his will.

Nov. 1812.

I think, therefore, that the court ought to have instructed the jury, that in case they found the facts to be true, as claimed by the defendant, their verdict should be in his favour. In this respect, it appears to me, they erred; and on this ground, according to my judgment, a new trial ought to be granted.

New trial not to be granted.