PRESIDENT, DIRECTORS, &c. OF THE ORIENTAL BANK *vs*
THOMAS HASKINS.

Where a paper containing an agreement had become of no importance to the parties,
by reason of a new agreement between them respecting the same subject matter, and
had been given up to the promisor, it was *held*, that upon his making affidavit that
he had searched diligently for it, but could not find it, and that he supposed it had
been destroyed, he might give parol evidence of its contents. Such case does not
come within the rule, (if it be a rule,) that a party cannot give evidence of the con-
tents of a paper sworn by him to be lost or destroyed, without so accounting for its
loss or destruction as to repel all inference of a fraudulent design in its destruction.

A secret trust, inconsistent with the terms of a conveyance made by a debtor of his real
estate, is evidence that the conveyance is fraudulent against his creditors, if it be
*not* satisfactorily accounted for ; but it is not fraud *per se*, nor conclusive evidence
of fraud.

A conveyance of real estate, originally fraudulent against creditors, may be purged of
the fraud by matter *ex post facto*, whereby the fraudulent intent is abandoned and
the conveyance confirmed for a good and adequate consideration, *bonâ fide.* There
is no distinction, in this respect, between conveyances originally fraudulent against
creditors, and fraudulent against subsequent purchasers ; both are voidable only, and
not absolutely void.

WRIT of entry to recover a parcel of land in Roxbury
Trial before *Wilde*, J. who made the following report of the
case :

The demandants claimed under a levy of an execution against
John Haskins, made on the 19th of February 1840, the estate
having been attached by them on the 20th of June 1838. The
tenant claimed under a deed from said John Haskins, dated
September 9th, and recorded September 22d 1835. The de-
mandants sought to impeach this deed as fraudulent against
creditors. To prove the fraud, they called John Haskins, the
grantor, who testified that he conveyed the demanded premises
to his father, the tenant, as collateral security for debts due to
him, liabilities incurred by him, and sums which said John might
thereafter owe him, and liabilities which the tenant might there-
after incur for said John ; and not to delay, hinder, or defraud
creditors, or in any manner to put the same beyond their reach ·
That the tenant gave him back a paper, declaring the terms on
which he had received the conveyance, and that he was to re-
convey the land upon payment and full indemnity : That on

the 9th of March 1838, the said John settled his account with the tenant, and was found justly indebted to him, for sums then advanced and paid, $15,638, and gave his negotiable note, which he called a memorandum of the amount due from him to the tenant, and which he said was not written for negotiable paper, dated March 1st 1838, on demand, with interest; and that no part of the value of the land was deducted from the amount of this note; and that it was agreed between him and the tenant, at the time of this settlement, that the witness should thereafter cease to have any legal or equitable interest in the land, and that the same should thereafter belong absolutely to the tenant: That there was a friendly understanding between him and the tenant, that if, contrary to their expectations, (both then believing the land not to be worth half the debt, and that no surplus could remain,) the land should rise in value, so as to produce, on sale, more than the amount of said note and interest, the tenant was to give to the witness the benefit of such surplus, upon such sale: That at this settlement, nothing was said about the paper given back by the tenant when he took his deed on the 9th of September 1835; the witness declaring that he had forgotten the paper at that time: That the paper was then in Roxbury, and the said settlement was made in Boston; and that it would have been given up, if it had been recollected: That in the autumn of 1839, the witness, having been absent for a time, returned to Roxbury, and accidentally found the paper in an old pocketbook, and thinking the tenant ought to have it, pursuant to the terms of the settlement of March 1838, gave it up to him, and had never seen it since.

The tenant thereupon made affidavit, that he had made diligent search for said paper, and could not find it, and that he supposed it was destroyed.

The demandants objected to oral evidence of the contents of said paper, but the objection was overruled; and the witness then testified, that the paper contained an agreement on the part of the tenant to reconvey to him the premises when he should pay all he owed or might thereafter owe the tenant, and all sums for which the tenant then was or might thereafter become liable

on account of the witness : That at the time of making said conveyance and said paper, the witness owed the tenant $ 3793, and the tenant was then legally liable for the witness to the amount of $ 7024 ; and that it was expected the witness would have more money of him, and that he would incur further liabilities on account of the witness.

This witness, and others also, testified that the land in question, subject to prior legal incumbrances, was not then, and is not now, worth half the amount of the sums which he testified that he owed to the tenant.

The jury were instructed, that the paper given back by the tenant, September 9th 1835, was only *evidence* of fraud, but not *conclusive* evidence, and that it was for them to determine, upon the testimony of John Haskins, and all the evidence in the case, whether the deed was made *bonâ fide*, or with an intent to delay, hinder, or defraud creditors ; and that the burden of proof was on the tenant, after the existence of said paper was proved.

The jury were further instructed, that if they should be of opinion that the deed was originally fraudulent as against creditors, yet if they believed the testimony of said John Haskins, as to what took place in March 1838, before the original attachment of the land by the demandants ; and if they should be of opinion — giving due effect to the fact, that the said paper signed by the tenant was not given up at the time of the adjustment — that there was then no actual intention to delay, hinder, or defraud creditors, but that the transactions were *bonâ fide* and fair at the time of said settlement — what then took place would purge any supposed fraud in the deed, and the title of the tenant would be valid.

The jury found a verdict for the tenant, and the demandants moved for a new trial. Verdict to be set aside, and a new trial granted, if either of the foregoing rulings or instructions was incorrect in point of law ; otherwise, judgment to be rendered on the verdict.

*B. R. Curtis & Clarke*, for the demandants. Oral evidence of the paper was not admissible, under the circumstances of the

case. Such evidence cannot be received unless the loss or destruction of the paper is so accounted for as to rebut the inference of a fraudulent design in destroying it. *Blade* v. *Noland,* 12 Wend. 173.

The secret trust rendered the deed fraudulent *per se,* and absolutely void against the grantor's creditors. *N. E. Marine Ins. Co.* v. *Chandler,* 16 Mass. 279. *Fairbanks* v. *Metcalf,* 8 Mass. 238. The law implies fraud, where the necessary tendency of the conveyance is to defraud creditors. 2 Kent Com. (3d. ed.) 521. *Gregory* v. *Perkins,* 4 Dev. 50. *Sherwood* v. *Marwick,* 5 Greenl. 295. *Marden* v. *Babcock,* 2 Met. 104. *Smith* v. *Lane,* 3 Pick. 205. To entitle the demandants to impeach the deed, it is not necessary to show that the grantor was insolvent when he made it ; it is sufficient to show that he was deeply indebted. *Parkman* v. *Welch,* 19 Pick. 231.

The deed in question was absolutely void as against creditors, and could not be made valid by matter *ex post facto.* Roberts Fraud. Con. 496, 521, 591, 596. *Preston* v. *Crofut,* 1 Connect. 527, *note. Beach* v. *Catlin,* 4 Day, 284. *Merrill* v. *Meachum,* 5 Day, 341. *Roberts* v. *Anderson,* 3 Johns. Ch. 371. *Sands* v. *Codwise,* 4 Johns. 598. *U. States* v. *Mertz,* 2 Watts, 406.

*Choate,* for the tenant. The case of *Cutler* v. *Dickinson,* 8 Pick. 386, is conclusive to the point that even an absolute deed of real estate is not fraudulent *per se,* by reason of a parol agreement for a reconveyance on the grantee's being repaid or indemnified. See also *Jackson* v. *Timmerman,* 7 Wend. 438.

A deed fraudulent as against creditors is not absolutely void as against them. If it were so, doubtless the fraud could not be purged by matter *ex post facto. Somes* v. *Brewer,* 2 Pick. 198, shows that the doctrine cited from the Connecticut reports is mere local law. The decision of the chancellor of New York in 3 Johns. Ch. 371, in which he adopted that doctrine, was reversed in the supreme court of errors. 18 Johns. 515. That fraud may be purged by matter *ex post facto,* as well in conveyances of real as of personal property, is an ancient and well established doctrine of the common law. *Newport's case,*

Skin. 423. *Prodgers* v. *Langham*, 1 Sid. 133. *S. C.* 1 Keb 486. 1 East, 95. 1 Johns. Ch. 271, 272. 15 Johns. 587. *Verplank* v. *Sterry*, 12 Johns. 552. *Thomas* v. *Goodwin*, 12 Mass. 140. *Hutchins* v. *Sprague*, 4 N. Hamp. 469.

There is nothing to indicate a fraudulent intent in the destruction of the paper, (if it was destroyed,) which was given by the tenant to his son. The case in 12 Wend. is therefore inappl - cable. Besides, the demandants made the son their witness.

*Curtis* in reply. The doctrine that fraud may be purged by matter *ex post facto* is applicable only to personal property, where no new paper title is necessary, and to conveyances of real estate that are voidable only. Conveyances to defraud *purchasers* are, from policy, held to be voidable only. Conveyances to defraud *creditors* are held to be absolutely void *ab initio*, as against creditors. *Murray* v. *Riggs*, 15 Johns. 586, 587. The case of *Cutler* v. *Dickinson*, 8 Pick. 386, can hardly be reconciled with *Smith* v. *Lane*, 3 Pick. 205.

WILDE, J. Several exceptions have been taken to the ruling of the court at the trial, as to the admission of evidence, and to the instructions given to the jury. These exceptions have been taken into consideration by the court, after hearing the arguments of counsel, and the opinion we have formed thereon I will now briefly state.

The tenant was permitted to prove by parol the contents of a certain paper, being a written agreement whereby he had agreed to reconvey the demanded premises to the witness, on a certain contingency. It was testified by the witness, that this paper had been given up by him to the tenant, after they had made a new agreement by which the witness relinquished all claim, under said written agreement, for a reconveyance. And the tenant thereupon made affidavit, that he had made diligent search for said paper, and could not find it, and that he supposed it was destroyed. This evidence was decided to be sufficient to prove the loss or destruction of the written agreement, so as to admit secondary evidence of its contents; and we are clearly of opinion, that it was rightly so decided. As between the parties, the paper had become of no importance, by reason of the

new agreement ; and the destruction of it, if it was destroyed, would furnish no proof nor create any suspicion of a fraudulent design in its destruction.   If it had continued a subsisting security, and had been voluntarily destroyed, it might have ad mitted a different inference, and the case of *Blade* v. *Noland,* 12 Wend. 173, might perhaps have been applicable.   But the primary evidence in this case repels the inference there made, and proves, as satisfactorily as the nature of the case admits, that the paper had been lost or destroyed ; and in either case, the secondary evidence was admissible.

The next question to be determined is, whether there are any legal exceptions to the instructions given to the jury.

It is objected in the first place, that the evidence disclosed a secret trust in the conveyance from John Haskins to the tenant, which rendered it fraudulent against creditors, and that the evidence of the fraudulent intent was conclusive.   That this is not the law in respect to the sale and conveyance of personal property is unquestionable.   A secret trust inconsistent with the terms of a sale of property is evidence of fraud, if not satisfactorily accounted for ; but it is not fraud *per se*, nor con clusive evidence of fraud.   But it is contended, that there is a distinction between the conveyance of real and personal estate ; and there are *dicta* in support of such a distinction.   But they do not seem to us to be well founded on principle or authority.   The decision in the case of *Cutler* v. *Dickinson,* 8 Pick. 386, is expressly to the contrary.   In that case, it was decided that an absolute conveyance of land, the grantor taking back a writing not under seal, for a reconveyance on a condition, was not *per se* fraudulent as against creditors.   That was a case in all respects similar to the present, so far as it relates to the question under consideration, and is decisive.   A question somewhat similar has been much discussed, and upon which there are conflicting decisions.   It was laid down by Buller, J. in *Edwards* v. *Harben*, 2 T. R. 596, as a general rule, that in the transfer of goods and chattels, the possession must accompany and follow the deed, and that an absolute conveyance without possession, was in point of law fraudulent, and not merely

evidence of fraud. That this was not considered to be the law in ancient times, appears very clearly by *Twyne's case*, 3 Co. 80. It was in that case held, that a secret trust, and the pos session of the goods sold by the vendor after the sale, were only badges of fraud and were not fraudulent *per se*. And so it was considered in several subsequent cases. And so, I think, the, law is now held in England, notwithstanding the case of *Edwards* v. *Harben*, and some other cases. In this Commonwealth, it has been uniformly held that a sale of goods may be valid, although the possession does not accompany and follow the conveyance ; that the subsequent possession by the vendor is evidence of a secret trust and collusion between the parties, to be submitted to a jury ; but that it is not conclusive evidence of fraud. 15 Mass. 247. 16 Mass. 279. 1 Pick. 295. 399. 2 Met. 263. See also Cowp. 432. 2 Bulst. 226. 2 Bos. & Pul. 60. Ry. & Mood. 312. 4 Barn. & Cres. 654. 1 M. & S. 254. 4 Taunt. 823. 8 Taunt. 838. 3 Barn. & Adolph. 498. 7 Wend. 438 3 Cow. 166. 8 Cow. 453. 3 Yerg. 475. 502.

Another objection to the instructions to the jury is much relied on by the counsel for the demandants, in regard to which there are several conflicting decisions in which the question has been very fully discussed. The objection is to that part of the charge in which the jury were instructed, that although they might be of opinion that the conveyance to the tenant was originally fraudulent as against creditors, yet if they should be of opinion, that there was no fraudulent intent in the subsequent settlement and adjustment of the concerns between the parties, and that there was no intention to delay or defraud creditors, and that the transaction was *bonâ fide* and fair, then that the transaction would purge any supposed fraud in the deed. It is objected that the original conveyance to the tenant was absolutely void as against creditors, and not merely voidable by them, so that no subsequent transaction could purge the fraud. This objection is sustained by the cases of *Preston* v. *Crofut*, 1 Connect. 527, *note*, and *Merrill* v. *Meachum*, 5 Day, 341. In the latter case, it was decided that a deed made with an intent to defraud creditors was absolutely void, and that no subsequent act

of the parties could render the deed valid against creditors. In that case, the deed was not delivered to the grantee when it was made ; but when it was made known to him, he assented to it, and paid an adequate consideration for a part of the land, and reconveyed the residue to the first grantor. The case was decided upon a supposed distinction between the effects on a conveyance, by *St.* 13 Eliz. *c.* 5, and *St.* 27 Eliz. *c.* 4. Two of the judges, Smith and Ingersoll, dissented from the opinion of the majority of the judges, and for reasons, as it seems to us, very forcible and convincing. The distinction, however, on which these cases were decided, was maintained by Chancellor Kent, in *Roberts* v. *Anderson*, 3 Johns. Ch. 371. The question was afterwards very fully discussed by Story, J. in *Bean* v. *Smith*, 2 Mason, 252, and he fully concurred in the opinion expressed by the dissenting judges in Connecticut. He considered the distinction, on which those cases in Connecticut were decided, as entirely novel and unsupported by any previously adjudged case, or by any sufficient reason. And the same opinion was expressed by Parker, C. J. in *Somes* v. *Brewer*, 2 Pick. 198. " Great weight," he said, " should be attached to the opinion of such men as composed that court, and the more, as their opinion is unequivocally approved of and sanctioned by Mr. Chancellor Kent. Still as their decision runs counter to all our practical notions, and to many judicial decisions in this State ; as it was combatted with great force by a very eminent member of the Connecticut bench ; and as the decree of the chancellor of New York was reversed in the court of errors, conformably to the opinion of the common law judges of that State ; we cannot think it will be adopted beyond the jurisdiction of Connecticut." See also 4 Kent Com. (3d. ed.) 464, *& note.*

We entirely concur in the opinions expressed by Chief Justice Parker and Mr. Justice Story, and for the reasons by them assigned in the discussion of the question. We think there is no such distinction between the 13th and 27th of Eliz. as was maintained by the majority of the court in Connecticut, but that conveyances, fraudulent as against creditors or against subse

quent purchasers, are voidable only, and not absolutely void ; and that if the fraudulent grantee conveys the estate to a *bonâ fide* purchaser for a valuable consideration, the conveyance is good, and the first grant will be purged of the fraud. And so we hold that such a fraudulent grant may be purged of the fraud by matter *ex post facto*, whereby the fraudulent intent is abandoned, and the grant confirmed for a good and adequate consideration *bonâ fide*. Comb. 222. 249. 1 Sid. 133. 1 New Rep. 332. 10 Johns. 185. 12 Johns. 552. 14 Johns. 407. 1 Johns. Ch. 271. And so it was held in *Thomas* v. *Goodwin*, 12 Mass. 140. In that case, one who was summoned as trustee had received goods under circumstances indicative of fraud, and which would have fixed him as trustee ; but before the service of process upon him, he had paid debts of the principal to the amount of the goods received, and he was discharged. And a similar decision was made in *Hutchins* v. *Sprague*, 4 N. Hamp. 469.

These decisions are in accordance with the instructions to the jury in the present case, and we are of opinion that the exceptions taken cannot be maintained. Whether the jury found there was any fraud in the original conveyance does not appear. But if they did, we think it was competent for them to return a verdict for the tenant, if they believed from the evidence that the fraud was purged by a *bonâ fide* settlement, and a full payment for the land, before the plaintiffs' attachment.

*Judgment on the verdict.*