# Bibb v. Hitchcock.

### Bill in Equity to enjoin Judgment at Law.

1. *Equitable relief against judgment at law.* — A party who seeks equitable relief against a judgment at law, to which he interposed no defence, must show that he had a sufficient defence at law, and that he was prevented from making it by surprise, accident, mistake, or fraud, or by the act of the opposite party, without any fault or legal negligence on his own part.

2. *Consideration of note.* — A promissory note, given to a postmaster by one of the clerks in his office, for a sum of money which had been embezzled by said clerk, and for which the postmaster was responsible to the United States government, is supported by a sufficient consideration, and is not illegal and void, as against public policy, though shown to have been given in pursuance of an agreement between the postmaster and his clerk, to the effect that, if the clerk would give such note, with sureties, the postmaster would not prosecute him criminally for the embezzlement.

3. *Appeal from interlocutory order, overruling motion to dissolve injunction, and to dismiss bill for want of equity; practice.* — Where the certificate of appeal, in a chancery cause, describes the decree appealed from " as the decree in said cause; " and the decree, thus referred to, contains an order overruling a motion to dissolve the injunction, and also an order overruling a motion to dismiss the bill for want of equity; and errors are assigned on both of said orders; and there is a joinder in error by the appellee, without objection to any of the assignments of error, — he cannot afterwards be heard to insist that the appeal was taken only from the order overruling the motion to dissolve the injunction.

4. *Judgment reversed and rendered.* — On appeal from a decree in a chancery cause overruling a motion to dissolve the injunction on the denials of the answer, and also a motion to dismiss the bill for want of equity; if the bill is substantially wanting in equity, so that it cannot be amended, the appellate court, on reversing the chancellor's decree, will itself render the proper decree, dismissing the bill, without remanding the cause.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. ADAM C. FELDER.

The facts of this case were thus stated by PETERS, C. J. : —

" This is a suit in chancery to set aside a judgment at law and permit a rehearing, on the ground that the promissory note, on which the judgment is founded, was without legal consideration, and void, as against the public policy. The record shows that one Raley was a clerk in the post-office at Montgomery, Alabama, in 1868; and that Bibb, the appellant, was the postmaster. Raley, while such clerk, embezzled a considerable amount of funds deposited in the post-office, while said Bibb was such postmaster as above said, and for

which Bibb was responsible to the government of the United States. Then the 4th section of the bill further alleges as follows : ' Orator further states, on information and belief, that after said Bibb discovered said embezzlement as aforesaid by said Raley,' he became ' anxious to secure himself against loss by said embezzlement as aforesaid, and agreed with said Raley that if said Raley would give said Bibb a promissory note for the amount embezzled as aforesaid by said Raley, said Bibb would not institute criminal proceedings against said Raley, or prosecute him criminally before the courts of the country ; and that in pursuance of said agreement, and in consideration of said agreement, and for no other consideration whatever, said Raley promised said Bibb to give a note, with security, *for the payment of the amount so embezzled.*' In execution of this agreement, Raley gave a promissory note to said Bibb, of which the following is a copy : —

" 'MONTGOMERY, ALA., Nov. 22, 1868.

" 'Fifteen days after date, we, or either of us, promise to pay W. J. Bibb, or order, the sum of two hundred and twenty-five dollars, for value received.'

" This note was signed by Raley as maker, and by several other persons, including the appellee (said Hitchcock), as the sureties of the maker, and delivered to said Bibb. On the 15th day of June, 1871, Bibb brought suit on this note, in the City Court of Montgomery, against said Hitchcock, and other parties thereto. Process was served on Hitchcock, and he then had notice of the defence on which he now relies in his present bill. This suit was dismissed by Bibb, in vacation, on the 30th day of January, 1872, without giving notice to the complainant Hitchcock, or to any of the defendants in said suit thus dismissed. On the same day this suit was thus dismissed, a second suit was commenced by Bibb on said note, in the City Court of Montgomery, by summons and complaint against said Hitchcock alone. This suit, after proper service of the summons, was prosecuted to judgment. This judgment was by default, for $300 and costs. The reason for failing to make defence at law is thus stated in the bill : —

" ' Your orator, never having notice of the dismissal of the suit (first) above referred to, and thinking the same pending, and knowing that counsel had been employed to defend the same, and being ignorant of the nature of the summons and complaint served on him, and thinking it was the same suit as above referred to, gave himself no uneasiness about the defence thereto, as he knew counsel had already been employed to defend the same ; and he knew nothing further of the suit until the sheriff levied upon orator's property, to sell the same

[Bibb *v.* Hitchcock.]

to satisfy a judgment against your orator, which your orator states was rendered against him, by default, on the 22d day of February, 1872, in the City Court for Montgomery, on said above mentioned suit (note ?), and was for $300 and costs.'

" This bill was filed May 20, 1872 ; and the complainant alleges that he did not learn ' the nature of the defence and facts set out in paragraphs 2, 3, 4 of this bill,' before that date. Yet in the 5th section of this bill it is admitted that ' those of the defendants who considered themselves mainly interested in said suit ' (that is, the first suit on the note), ' informed your orator that there was a good defence to said *note*, and that he need give himself no further uneasiness about it.' Bibb, in his answer, denied the allegations of the bill, which set up the agreement stated in the 4th section of the bill above quoted, and insisted that the note was given to secure the payment to him of the moneys embezzled by Raley, and not in compromise of any criminal prosecution. He also demurred, and moved to dismiss the bill for want of equity, and asked a dissolution of the injunction that had been previously granted in the case. These motions were all denied by the chancellor in the court below. From the order refusing the motion to dismiss the bill for want of equity, and to dissolve the injunction, the respondent, Bibb, appealed to this court, and here assigns the same for error."

L. A. SHAVER, for appellant. — A defendant to a judgment at law, seeking an injunction from a court of chancery, because of defences available at law, must set forth in his bill facts establishing two propositions : 1st, that he has been prevented from making his defence at law by fraud, accident, or the act of his adversary ; and, 2d, that the failure to defend at law is attributable *solely* to fraud, accident, or the act of his adversary, unmixed with negligence on his own part. Brickell's Digest, p. 666'; 2 Story's Equity, § 887 ; *Allman* v. *Owen*, 31 Ala. 169 ; *Stetson & Co.* v. *Goldsmith*, 31 Ala. 651 ; *French* v. *Garner*, 7 Porter, 549. The appellee's bill shows that his failure to defend at law is attributable solely to his own negligence, without any fraud, accident, or act of the opposite party.

2. The bill alleges, that the consideration of the note, on which the judgment was rendered, was an agreement that Bibb would not institute criminal proceedings against Raley, the principal in the note, or prosecute him criminally before the courts of the country, for an embezzlement committed by him while clerk in the post-office under Bibb. Whether such an agreement is illegal, depends on the question whether such embezzlement is a misdemeanor or a felony. An agreement not to

[Bibb v. Hitchcock.]

prosecute criminally for a misdemeanor is not an offence, either at common law or by statute. "Every man may become a prosecutor, but no man is bound to, except in some few of the more enormous offences, as treason; but if the prosecutor should compound a felony, he would be guilty of a crime." Bouv. Law Dictionary, tit. *Prosecutor*. Offences against the post-office law of 1825 are not felonies. *United States* v. *Lancaster*, 2 McLean, 431 ; Brightly's Digest, 216, § 80.

3. The bill further alleges, " that said Bibb was responsible to the government of the United States for the amount of said embezzlement, and became anxious to secure himself against loss by said embezzlement; " and accordingly he procured the said note. This shows a valid consideration for the note, outside of the alleged illegal agreement. Chitty on Contracts, 675.

4. The failure to give notice of the dismissal of the first suit was a mere irregularity, which does not justify a resort to equity. *Saunders* v. *Albritton*, 37 Ala. 716 ; *Lucas* v. *Bank of Darien*, 2 Stewart, 280. Besides, if the first suit was not properly dismissed, this was matter of defence to the second suit.

5. The cases cited by appellee's counsel, as establishing an exception to the general rule first above laid down, are cases of contracts founded on gambling considerations, which are matters of statutory regulations, and governed by rules peculiar to themselves. *Roberts* v. *Taylor*, 7 Porter, 251 ; *Cheatham* v. *Young*, 5 Ala. 355 ; *Manning* v. *Manning*, 8 Ala. 142 ; *Flinn & Dulany* v. *Barclay*, 15 Ala. 626. Said general rule is itself based upon the most imperative public policy. 2 Story's Equity, §§ 888–96.

6. The answer contains a full and complete denial of the allegations on which the equity of the bill rests. When that is the case, the injunction should be dissolved as a matter of course, unless irreparable mischief might result from the dissolution ; and no irreparable mischief could have resulted, as the appellant is alleged to be solvent. *Brooks* v. *Diaz & Co.* 35 Ala. 599; *Sanders* v. *Cavett*, 38 Ala. 51 ; *Bibb* v. *Shackleford*, 38 Ala. 611. The chancellor not being clothed with any discretion in the case, and the equity of the bill being controverted by the answer, this court has no alternative but to reverse the decree. *Miller* v. *Bates*, 35 Ala. 580 ; *Powell* v. *Central Plank Road Co.* 24 Ala. 411. An injunction may be dissolved on the answer of one defendant, when he alone is charged with knowledge of the facts. *Lang* v. *Brown*, 4 Ala. 622.

THOMAS G. JONES, *contra.* — I. As a general rule, the taking of money, or other thing of value, to forbear or stifle a criminal prosecution *of any nature*, whether felony or misdemeanor, is an indictable offence; the only exception being where the misdemeanor is so small, or partakes so much of the nature of a *mere private injury*, as to leave the compounding of it not indictable. This rule of law is aimed at the turpitude of the offence, rather than at the technical name by which it is known; and so, also, is the elementary rule, that no right of action can be founded on such a contract. It makes no difference, therefore, whether the embezzlement in this case was, technically, a misdemeanor, or a felony against the laws of the United States, under which no crime is a felony, unless the statute so declares, although it may be punished more severely than some technical felonies. *Jones* v. *Rice*, 18 Pick. 440; *Plummer* v. *Smith*, 5 N. H. 553; *Johnson* v. *Ogilvy*, 3 P. Wms.; *Commonwealth* v. *Pease*, 16 Mass. 91.

II. The person whose money is embezzled may receive from the embezzler the amount, or take his note for it, and the transaction is perfectly valid; but if to the legal consideration, arising from the debt due, he add the illegal consideration growing out of the agreement to stifle the prosecution, the whole contract is void. *Bell* v. *Wood*, 2 Bay (So. Ca.), 247. See opinion of Lord Denman in *Keir* v. *Leeman* (6 Adolphus & Ellis), 6 Q. B. 308, — the leading case on this subject, in which all the authorities are cited and discussed. The case of *Steuben County Bank* v. *Matthewson*, 5 Hill (N. Y.), 249, is directly in point.

" Admitting the existence of cases where silence would be excusable, it by no means follows that an express contract to conceal the offence, or smother its prosecution, must be sanctioned by law, or enforced by the judicial tribunals," because the party injured " merely agreed not to do something which he was not bound to do." *Roll* v. *Raguet*, 4 Ohio, 418.

III. If this case be tested by the ordinary rules of diligence, it is admitted that appellee was negligent, but it is submitted that they can have no application to it. The making of this contract was a crime, and it grew out of crime. Taking the contract into a law court, concealing the facts, and asking judgment upon it as though it were valid, was a *fraud* on the law court. The highest considerations of public policy demand that such contracts shall not be enforced, and that public policy is a part and parcel of the law of every case, if the facts give any notice of it to the court. It can only operate through relief to some of the parties, and this is granted out of regard for the *law*, not for the parties. No question of diligence arises; but the question is, has the court been applied to in time to

[Bibb v. Hitchcock.]

prevent the *execution* of the contract? If it has, the public policy commands the court to act; and in all such cases, the question is, whether on the facts brought to the notice of the court, the public policy will allow the court to render a decree, the plain effect of which will be to permit the law court to be made the medium of enforcing a judgment, obtained by fraud, on a contract which the law denounces. Diligence has nothing to do with the question. C. J. TANEY, in *Gough* v. *Pratt* (9 Maryland, p. 527), speaking of the diligence ordinarily required, says, but "*it does not follow that the same rule is to be applied, when contracts are made or securities taken in violation of law, or contrary to its declared policy.*" In answer to the suggestion, that a wholesome rule of public policy is broken down in disregarding the lack of diligence on the part of him who seeks relief from such contracts, he declares: "*When the public policy is so obvious, and is so clearly founded in principles of justice, and required by the interests of society, it would ill become a court of equity, by narrow and technical constructions, to deprive itself of the power of enforcing it.*" The party complaining of want of diligence has no rights which equity is bound to respect, and it is against the sovereign — the law — to whom *laches* cannot be imputed, that a wrong-doer seeks to invoke a rule of diligence applicable only to the *just*, seeking to maintain *rights* against wrong-doers. It is true that the law leaves parties in *pari delicto* where they leave themselves; but a court of equity will not allow the courts to be used to enforce such contracts, if it can interfere before the consummation of the void contract. If, by a *fraud*, based on the illegal contract, growing out of a crime, one party uses a court to get a judgment, equity ought to interfere, and place them in their original *status*, by *undoing only what the court did.* 18 Vesey, 379; 4 Randolph, 368; Douglas's Reports, p. 673, *note;* Cowper, 270, 790; 1 Brown's Chan. 543, *note;* 1 Story's Equity, last part, § 298, and § 293, note three.

IV. But appellee was ignorant of the illegal agreement, is an innocent party, not in *pari delicto*, or at fault, and he asks relief against a wrong-doer. If courts are passive as between parties in *pari delicto*, ought not a court of equity to become "*active*" in a case like this, in favor of the innocent party? 18 Vesey, 379; 10 Vesey, 366; 7 Porter, 256; 14 Illinois, 376.

V. The answer was evasive; many of its statements are mere negative pregnants, and the chancellor rightfully refused to dissolve on the denials, when taken in connection with the facts admitted. *Grady et al.* v. *Robinson*, 28 Ala. 294, and cases cited.

[Bibb *v.* Hitchcock.]

PETERS, C. J. (After stating the facts as above set forth). A bill which seeks a rehearing in chancery, after a judgment in a court of law, must show a sufficient defence at law, of which the complainant could have availed himself, but was prevented from doing so by some surprise, accident, mistake, or fraud, or by some act of the opposite party, unmixed with any fault or negligence on the part of the party complaining. *M' Collum* v. *Prewett,* 37 Ala. 573 ; *Garrett et al.* v. *Lynch, Adm'r,* 44 Ala. 683. In this case, there is no allegation or pretence of fraud, or act of the opposite party, which prevented the defence at law ; and there is no allegation of any necessity for a discovery to establish the defence at law. The complainant was duly served with process, in each suit on the note. He admits that he had notice of a sufficient defence at the time of the pendency of the first suit ; and he shows that it was his own fault and negligence that he did not plead it. It seems that he gave no attention to the matter whatever, and permitted the judgment to be taken by default. The bill is fatally defective in this particular. It wholly fails to show any sufficient diligence in making any defence at law, or any sufficient excuse for this failure to make it. The bill was, therefore, devoid of equity, and should have been dismissed on the motion in the court below. 1 Brick. Digest, p. 666, § 376, and cases there cited.

2. But is the defence insisted on sufficient to bar a recovery at law ? If Bibb was bound to make good the amount of Raley's embezzlement, as the bill alleges, then he stood in the attitude of security for Raley, and Raley would be bound to refund to him the amount he would be forced to pay for the embezzlement. The giving of the note to Bibb, by Raley, showed that he accepted the payment that Bibb made for him. This would establish the relation of debtor and creditor between them. *Ross* v. *Pearson,* 21 Ala. 473. The consideration of the note was, then, a debt which Raley owed to Bibb, for the amount of the embezzlement. This was a legal consideration, and Raley could not be permitted to repudiate the payment of the note. If the note bound Raley, as it certainly did, it also bound his surety to the same extent. *Evans et al.* v. *Keeland,* 9 Ala. 42. The agreement to give the note with surety, for the amount of the embezzlement, is not the contract on which the suit in this case is founded. That agreement is such an one as the law might not have enforced ; but the contract of the note, to which that agreement led, is quite a different thing. This latter contract is not affected with the vice of that agreement. It was proper and right in itself, and it is founded on a legal consideration, as is shown in the bill ; that is, the obligation that Raley was under to Bibb, to make good the amount of the embezzlement that Bibb was liable to pay for him.

[Bibb v. Hitchcock.]

2 Kent, 468 ; *Howe* v. *Synge*, 15 East, 440. The general rule is, that any act of the plaintiff, from which the defendant derives a benefit, is a sufficient consideration to support a promise or contract. 1 Brick. Dig. p. 382, § 114, and cases there cited. Bibb's act in paying the amount of the embezzlement for Raley was a benefit to Raley. The consideration of Raley's note is this benefit, and not the agreement to refrain from the prosecution of said Raley for embezzlement, as is argued in appellee's brief. There is, then, no sufficient defence shown in the bill to the suit at law. The motion to dismiss for want of equity should have prevailed in the court below. In refusing this motion, the court erred.

The judgment and order of the court below is reversed, and this court, proceeding to render the decree that should have been rendered in the court below, doth order, adjudge, and decree that the injunction heretofore allowed and issued in this case be dissolved ; that this bill be dismissed out of this court for want of equity, and that appellee, said Henry W. Hitchcock, pay the costs of this suit in this court, and in the court below.

NOTE BY REPORTER. — The following opinion was delivered on a subsequent day of the term, in response to an application by the appellee's counsel for a rehearing : —

PETERS, C. J. — The appellee, Hitchcock, moves this court " to vacate so much of the judgment rendered " in this cause on the 23d day of June, 1873, " as dismisses the original bill " in this suit ; upon the grounds that said judgment of dismissal was unauthorized by law, and that this court had no jurisdiction to dismiss said original bill. There are other grounds also stated for the motion, but, as they involve the same questions in different aspects, they need not be particularly noticed.

In the court below, there was a motion to dissolve the injunction granted on the filing of the original bill, on the denial of the answer, and also a motion to dismiss the bill for want of equity. These motions were heard together, and were each overruled by the learned chancellor. This decree, announcing this judgment of the court below, omitting the title of the cause, and the term of the court, is in these words : " This cause was submitted in term time, on motion of defendant : 1st, motion to dissolve the injunction on the denials of the answer ; 2d, motion to dismiss the bill for want of equity ; 3d, on demurrer of defendant Bibb to the bill. And on consideration of said several motions, after argument of counsel for the said Bibb, it is considered by the court that the said motions (be), and they are severally overruled, and that the said demurrer to said bill is also overruled, and that the said Bibb be

[Bibb v. Hitchcock.]

taxed with the costs of said several motions. May 28, 1872." The record shows that this is the judgment from which this appeal is taken. The instrument for the security for costs of the appeal shows that it is for an appeal "from decree refusing to dissolve injunction, &c., in the above cause." It also appears that the notice of appeal is for an appeal from the decree overruling the motion in said cause "to dissolve the injunction on the denials of the answer." And the certificate of the register, that an appeal was taken, recites, that an appeal was taken "from *the decree in said cause*, to the Supreme Court," without confining the appeal to either one of the motions mentioned in the decree. When the record was brought into this court, the following errors were assigned upon it : "1st. The court below erred in overruling the motion to dissolve the injunction on the denials of the answer; 2d. The court below erred in overruling the motion to dismiss the bill for want of equity ; 3d. The court below erred in overruling the demurrer to the bill; 4th. The court below erred as shown by the record." To this assignment of errors, the appellee, without objection, replied, " There is no error in the record." Upon this assignment of errors, the learned counsel for the parties most industriously discussed the questions in law arising on each of these assignments of error.

This being the state of the record, and the action of the parties, as represented by their counsel, this court could not presume that the appeal was not intended to extend beyond the refusal of the motion to dissolve the injunction. The certificate of the register, which gives this court jurisdiction of the case, shows that the appeal was taken from the whole decree rendered by the chancellor on the 28th day of May, 1872, and not from any particular portion of it, and the parties so treat it in this court. This they might do. By the Act of February 13, 1871, " An appeal lies to the Supreme Court, on all interlocutory orders, in term time or vacation, sustaining or dissolving injunctions." Acts of Ala. 1870, 1871, p. 20, No. 26, § 1. And by the Code, " An appeal to the Supreme Court may be taken, before the final determination of the cause, from any judgment or decree overruling a motion to dismiss a bill for want of equity ; " . . . . " but such appeal shall be taken only after the consent of the opposite party, or his attorney, is obtained to its being taken ; and on the trial of such appeal, there shall not be a reversal, if the Supreme Court discovers that the defect or error alleged or insisted on can be removed or remedied by amendment under existing laws." Rev. Code, § 3486. On such a record as this presents of the facts of this appeal, if the appellee did not consent to the appeal from the refusal to dismiss the bill for want of equity, he should have

moved in this court to strike out all the assignments of error on that order of refusal. By failing to do this, and joining in the errors thus assigned, he elected to treat the appeal as one from this judgment of refusal, as well as from the refusal to dissolve the injunction. He cannot be permitted now to withdraw or deny his consent thus given or implied. It is now too late to evade the effects of the issue thus presented, in this court.

The original bill is without equity, and its statement of facts shows that there are no reasonable grounds for amendment. When this is the case, this court will reverse the decree of the court below from which the appeal is taken, and on which errors are assigned, and render such decree in this court as should have been rendered in the court below. Rev. Code, § 3502. The jurisdiction to do this can hardly be reasonably doubted. Rev. Code. § 3485. The appellee's motion is, therefore, denied with costs.