# CASES DETERMINED

AT THE

# January Term, 1916.

WHINFIELD, Respondent, vs. MASSACHUSETTS BONDING & INSURANCE COMPANY, Appellant.

*September 15, 1915—January 11, 1916.*

*Surety or fidelity bonds are contracts of insurance: Construction: Warranties: Untrue statements in application: Avoidance of bonds.*

1. A bond issued by a surety company to indemnify an employer for loss sustained through dishonesty of an employee or agent has all the essential features of an insurance contract and is to be construed accordingly.

2. Statements or answers by the employer in the written application for such a bond are not to be deemed express warranties, even though the bond itself declares them to be such, where that declaration is qualified by other stipulations showing that the intent of the parties was merely that the employer should in such application state the facts honestly and correctly to the best of his knowledge.

3. Such an indemnity bond is a "contract of insurance" within the meaning of sec. 4202m, Stats. 1913, and under that statute statements of the employer in the application could not defeat the bond unless they were "false and made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

4. Where the surety company did not rely upon a statement made by the employer in the application for the bond, but relied upon the report of its own agent who made a special inquiry into the matter, such statement, having been made in good faith by the employer, although untrue, cannot be considered a misrepresentation or warranty which increased the risk or contributed to the loss, so as to defeat or avoid the bond.

VOL. 162 — 1

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiff is the executrix and the beneficiary of a large estate left by her deceased husband. On November 20, 1909, she appointed N. W. Sallade to act for her as attorney in fact to manage for her the personal property located in Wisconsin and which had come to his possession from her deceased husband, giving him full power to deposit and invest it for her and reinvest it whenever required, and to execute, hold, and deliver all necessary papers and do every act in her place and stead in regard thereto. Mr. Sallade received into his possession personal property of the plaintiff amounting to about $150,000, consisting largely of moneys, notes, mortgages, and other securities. While acting as plaintiff's attorney in fact in this matter Mr. Sallade was the treasurer of the Diocese of Fond du Lac, handling its funds and securities, and active manager of the Fond du Lac Church Furniture Company.

Mr. Sallade made monthly statements in writing to plaintiff of his accounts as her attorney in fact. During the summer of 1910 the plaintiff, by letter, suggested to Sallade the propriety of furnishing her a fidelity bond. In September, 1910, when plaintiff returned to Fond du Lac after an absence from the state from the time she appointed him, he furnished her a list of the securities which he stated were her property and that they were deposited in a safety deposit box at the Fond du Lac National Bank. Plaintiff and Sallade went to the bank, took the securities from the safety deposit box and compared and checked them with the monthly statement he had recently furnished her, and the securities produced from the box agreed with this monthly statement of his account. Some of these securities kept in the deposit box, which he represented as having been purchased for her and which appeared in his monthly reports, were in fact the property of the Diocese of Fond du Lac. The plaintiff in fact believed they were securities he had acquired and held for her.

Sallade had in his possession a private account in the form of a loose-leaf memorandum book. The trial court found as facts concerning it:

"That said Sallade also kept in his desk, at the Church Furniture Company's office, certain loose-leaf memoranda, not bound or fastened in any book, but merely tied together with thumb fasteners, the several sheets whereof were headed 'F. D. L. Furn. Co.,' except one headed 'N. W. Sallade and M. O. Pillsbury,' which indicated the sums taken from the plaintiff and by Sallade converted to the use of the Church Furniture Company, but said leaves had no notation thereon indicating that they referred in any way to the plaintiff's estate, and the plaintiff had no knowledge of the existence of said leaves or of the facts shown thereby."

On November 19, 1910, Sallade made application in writing to defendant for a surety bond. The defendant requested an "employer's statement" from plaintiff, and she, on December 22, 1910, made and signed such a statement, and attached thereto the list of securities which Sallade had furnished and checked with her in September, 1910. The application recites that her answers to the propounded printed questions of the statement were "to be taken as conditions precedent, and as the basis for the said bond applied for. . . ." By question 12 plaintiff answered that the means used to ascertain the correctness of Sallade's account were "a personal examination" and that they would be examined "yearly." The application also contains these questions and answers:

"13. When were his accounts last examined?" Answer. "Last of September in 1910. Amount of securities, $159,831.61, as per list examined and checked at that time, a copy of which is hereto attached." "14. Were they at that time in every respect correct, and proper securities and funds on hand to balance? Yes." "15. Is there now, or has there been, any shortage due you by applicant? No." "16. (a) Is he now indebted to you? No. (b) If so, state amount and nature of indebtedness. No." "17. Have you any reason to know of or suspect any previous defalcation or

shortage by the applicant or any circumstances tending to in-
dicate that he is not a proper person to bond? If so, give
particulars." Answer. "No."

The trial court found and the evidence sustains the conclu-
sion of fact:

"That the defendant, in executing said bond, did not rely
on the statement of the plaintiff, contained in said employer's
statement, as to the securities in the hands of Sallade owned
by her, but required the said list to be submitted to its local
agent at Fond du Lac, and required such agent to examine
the securities referred to in said list and compare them with
the descriptions therein, to assure itself that they were in fact
in Sallade's possession at the time the bond went into effect.
That said local agent did cursorily examine the identical se-
curities described in said list, and all of them, which were
produced and exhibited by Sallade to him. That none of
said securities ran to or had upon or with them assignments
running to the plaintiff or the said estate, nor did assignments
thereof exist. That the said local agent did not call for any
evidence of title to said securities, but relied on the oral rep-
resentations of Sallade, made at the time he examined the
same, that they belonged to the plaintiff and were held by
him for her."

After the examination of the securities by defendant's
local agent at Fond du Lac and upon entering into an ar-
rangement with Sallade for a joint control with Sallade over
the safety deposit box containing the mortgages he held as se-
curities for her, the defendant on January 10, 1911, deliv-
ered to plaintiff, upon payment of $175 to it as premium, its
bond of indemnity against loss through larceny or embezzle-
ment by Sallade as attorney in fact of the plaintiff. This
bond covered the period of one year from January 10, 1911.
Sallade died in August, 1911.

It appears that $14,119.41 of plaintiff's money was em-
bezzled by Sallade after the bond was given and while it was
in force. There is no dispute of the claim that Sallade had
in fact dishonestly appropriated and embezzled a consider-
able amount of plaintiff's property before September, 1910,

and that the lists of her securities he had made were false and included therein securities which did not belong to her estate, and a part of the securities he exhibited to her in September, 1910, and to defendant's agent before the issuance of the bond, as her property, were the property of the Diocese of Fond du Lac.

The bond contains the provisions that "upon the faith of said statement [employer's statement] . . . which employer hereby warrants to be true, it is hereby agreed and declared that subject to the provisions and conditions herein contained, which shall be conditions precedent to the right on the part of the employer to recover under this bond, . . . If the employer's written statement, hereinbefore referred to, shall be found in any respect untrue, this bond shall be void. . . . This bond is issued on the express understanding that the employee has not within the knowledge of the employer at any former period been a defaulter. . . ."

The trial court held that the bond is a binding obligation and that there were no breaches thereof on the part of the plaintiff on account of any misstatements of fact in her written statement upon which the bond issued and which was made a part thereof.

This is an appeal from a judgment awarding plaintiff recovery against defendant for the amount of Sallade's defalcation to her during the time the bond was in force.

For the appellant there was a brief by *Quarles, Spence & Quarles,* counsel, and *Irving A. Fish,* of counsel, and oral argument by *Mr. Fish* and *Mr. T. L. Doyle.*

For the respondent there was a brief signed by *Thompson, Thompson & Jackson,* and oral argument by *J. C. Thompson.*

The following opinion was filed October 26, 1915:

SIEBECKER, J.    The circuit court awarded recovery on the bond upon the ground that it was a binding contract made by the parties; that its conditions and stipulations had not been

breached by the plaintiff; and that plaintiff was entitled to be indemnified for the losses she sustained on account of Sallade's defalcations during the period of time it was in force.

It is the contention of the defendant that it is not liable because the bond recites that the "employer's statement" in her written application for the bond is a part thereof; that the bond was issued in consideration of the premium paid and "upon the faith of the said statements as aforesaid, by the employer, which employer hereby warrants to be true," and that if these written statements of the plaintiff "shall be found in any respect untrue, this bond shall be void.". The question resolves itself to the proposition, Were the answers in the written statement, to the effect that Sallade's accounts were last examined by her personally the "last of September in 1910. Amount of securities, $159,831.61, as per list examined and checked at that time, a copy of which is hereto attached," and that they were ". . . at that time in every respect correct, and proper securities and funds on hand to balance," and that there was not nor had there been at the time of the application any shortage in his accounts with her, and that he was not then in debt to her, express warranties? If these written statements which were made a part of the bond were agreed by the parties to be express warranties, then there can be no doubt, under the facts shown, that they were breached and plaintiff is barred of any recovery on the bond. We are of the opinion that the circuit court correctly held that these statements are not express warranties in this contract. In the law the contract is an insurance contract and its provisions must be construed in the light that provisions in insurance contracts are interpreted. As stated in the opinion of the court in *American S. Co. v. Pauly,* 170 U. S. 133, 144, 18 Sup. Ct. 552:

"If, looking at all its provisions, the bond is fairly and reasonably susceptible of two constructions, one favorable to the

bank and the other favorable to the Surety Company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the Surety Company. This is a well established rule in the law of insurance. (Citing.) . . . There is no sound reason why this rule should not be applied in the present case. The object of the bond in suit was to indemnify or insure the bank against loss arising from any act of fraud or dishonesty. . . . That object should not be defeated by any narrow interpretation of its provisions, nor by adopting a construction favorable to the company, if there be another construction equally admissible under the terms of the instrument executed for the protection of the bank."

This court, in dealing with a similar bond in the case of *United Am. F. Ins. Co. v. American B. Co.* 146 Wis. 573, 131 N. W. 994, in speaking of the nature of the contract states:

"It has all the essential features of an insurance contract and should be subject to the rules of construction applicable to such contracts. (Citing.) It being apparent that the bond sued on was prepared by the defendant, as to any ambiguity therein the provisions, conditions, and exceptions of the bond which tend to work a forfeiture should be construed most strongly against the party preparing the contract." Citing *French v. Fidelity & C. Co.* 135 Wis. 259, 265, 115 N. W. 869, and *American S. Co. v. Pauly, supra.*

In the case of *First Nat. Bank v. U. S. F. & G. Co.* 150 Wis. 601, 137 N. W. 742, it is repeated that such a bond "has all the essential features of an insurance contract, and that it is not to be construed according to the rules of law applicable to the ordinary accommodation surety." (Citing.) In *Redman v. Hartford F. Ins. Co.* 47 Wis. 89, 1 N. W. 393, it is held that the use of the word "warranty" in stipulations does not control the construction, for the reason that parties may make representations without employing the word "warrant"

which amount to warranties in law, and on the other hand the use of the word "warrant" may be no more than an agreement against false and fraudulent statements.

The written statement furnished plaintiff by the company informed her that "The company desired to have answers to the following questions and that the answers will be taken as the basis of the bond if issued," and "it is agreed that the above answers are to be taken as conditions precedent and as the basis of the bond applied for. . . ." After having answered questions 13 and 14 that Sallade's accounts in September, 1910, were in every respect correct as to amount and proper securities as per schedule attached, she is asked by question 17, "Have you any reason to know of or suspect any previous defalcation or shortage by the applicant, or any circumstances tending to indicate that he is not a proper person to bond? If so, give particulars," which plaintiff answered "No." The reasonable and natural inference from these questions is that the company demanded and plaintiff understood that she was undertaking to give to the company true and correct statements of fact to the best of her knowledge on the matters embraced in the questions. Looking at the contents of these written statements in connection with the provisions of the bond to the effect that any defaults of Sallade committed prior to the giving of the bond were not to be indemnified, and the provision "This bond is issued on the express understanding that the employee has not, within the knowledge of the employer, at any former period been a defaulter," the inference is reasonably clear and certain that the plaintiff understood that the company required of her as a condition precedent to the giving of the bond that she in good faith answer all the questions honestly and without concealment. These provisions of the statement and bond are out of harmony with the other provisions declaring that the statements of plaintiff are warranted by her to be true. Under these conditions of the transaction it is the well established

rule that the statements in the application will not be treated as warranties if the writings do not clearly show that such was the intent of the parties. *Hart v. Niagara F. Ins. Co.* 9 Wash. 620, 38 Pac. 213; *Wheaton v. North British & M. Ins. Co.* 76 Cal. 415, 13 Pac. 758; *Ætna Ins. Co. v. Simmons,* 49 Neb. 811, 69 N. W. 125; *Legler v. U. S. F. & G. Co.* 88 Ohio St. 336, 103 N. E. 897. The rule deduced from the authorities is stated as follows in vol. 2 of Cooley's Briefs on the Law of Insurance, on page 1147: "From these principles we may deduce the rule that statements will not be regarded as strict warranties, if qualified by other stipulations which by fair inference show a contrary intent." We consider that the provisions of the bond declaring plaintiff's answers in the written statement to be warranties are qualified by the above stipulations in the bond and written statement, and hence her answers are not to be held to be warranties but are to be regarded as representations. The circuit court found that the answers in the statement were truthfully and honestly made by the plaintiff and that she was not guilty of any fraudulent misrepresentation.

We are of the opinion that the plaintiff is entitled to recover under the provisions of sec. 4202m, Stats. 1913, which provides:

"1. No oral or written statement, representation, or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, or prevent its attaching unless such statement, representation, or warranty was false and made with actual intent to deceive or unless the matter misrepresented or made a warranty, increased the risk or contributed to the loss.

"2. No warranty incorporated in a contract of insurance relating to any fact prior to a loss shall defeat or avoid such policy unless the breach of such warranty increased the risk at the time of the loss, or contributed to the loss, or unless such breach existed at the time of the loss."

This is a general law, and by section number the legislature made it a part of ch. 176 of the statutes dealing with evidence, under the title "Provisions common to actions and proceedings in all courts." This indicates a legislative intent that the act is to apply to all contracts of insurance. We have shown that the bond in question is, by adjudications of this and other courts, regarded as an insurance contract, and hence this statute applies to the contract here in question. Similar statutes of Kentucky and Tennessee have been held to apply to fidelity contracts. *Warren D. Bank v. Fidelity & D. Co.* 25 Ky. L. Rep. 289, 74 S. W 1111, and *First Nat. Bank v. Fidelity & G. Co.* 110 Tenn. 70, 75 S. W. 1076. Under the provisions of sec. 4202*m,* Stats. 1913, the statements of plaintiff made by her to the written questions could not defeat the bond unless they were "false and made with actual intent to deceive." The trial court has found that, though the answers were not in fact true, the plaintiff honestly believed them to be true and she was not guilty of fraudulent misrepresentation. An examination of the record has led us to the conclusion that the evidence supports these findings of fact.

The fact that some of the securities enumerated in the list attached to plaintiff's answer to question 13 were not in fact plaintiff's, and the answer was in fact untrue, did not, under the facts shown and found, increase the risk or contribute to the loss and avoid the contract, because the defendant did not rely on the written statement as to the correctness of the list of securities and Sallade's having them in his possession for the plaintiff. The court found that defendant refused to issue the bond on plaintiff's statement and required of its local agent, Boreham, to check up the list and securities inventoried in the list, and that it issued the bond to plaintiff upon its agent's report that the list of securities held by Sallade as plaintiff's property were in fact in Sallade's possession, and that the list was correct, and that an arrangement for joint control of the safety deposit box and the securities

therein had been made by defendant's local agent and Sallade. It appears that defendant's agent had the same information as the plaintiff as to the correctness and ownership of the listed securities exhibited by Sallade as plaintiff's property, and that defendant relied on its agent's information as the inducement of issuing the bond. Under the facts shown it is clear that the plaintiff's written statements did not form the basis of issuing the bond, and hence cannot be considered as misrepresentations or warranties which increased the risk, or as being relied on and therefore contributing to the loss. Under such circumstances the defendant cannot assert that the untrue statements, innocently made by plaintiff, constitute a forfeiture, because it acted on its own knowledge, and plaintiff's statements did not contribute to the loss as contemplated by the statute governing the rights of the parties as to the alleged breaches of the contract. We are of the opinion that the trial court properly awarded judgment for the plaintiff.

*By the Court.*—The judgment appealed from is affirmed.

WINSLOW, C. J., and TIMLIN and BARNES, JJ., dissent.

A motion for a rehearing was submitted for the appellant on a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and for the respondent on a brief by *Thompson, Thompson, Allen & Gruenewald,* of counsel.

The motion was denied, with $25 costs, on January 11, 1916.