BLOEDOW and another, Trustees, Appellants, vs. NITSCHKE, Defendant: MARYLAND CASUALTY COMPANY, Respondent.

*December 2, 1941—January 13, 1942.*

For the appellants there was a brief by *Lehner & Lehner* of Princeton, and oral argument by *Philip Lehner*.

*John P. McGalloway* of Fond du Lac, for the respondent.

FOWLER, J.    The action is against the Maryland Casualty Company on its fidelity bond guaranteeing to indemnify the plaintiffs, as trustees of the patrons of a cheese factory, against embezzlement or larceny by the defendant Nitschke, a cheese maker, of money belonging to the patrons of the cheese factory which was conducted by Nitschke.  Nitschke was under contract with the patrons to manufacture the milk furnished by them into cheese, sell the cheese and pay to them the proceeds less two cents per pound for his services in manufacturing and selling.  Nitschke is a party to the suit, although he did not sign the bond and is not named therein as signatory thereto.  The embezzlement of Nitschke of the amount charged is admitted.  Trial was had to a jury.  At the close of the testimony both parties moved for a directed verdict.  Under sec. 270.26, Stats., the case therefore became for decision by the court.

The evidence was not at all in dispute.  The patrons required Nitschke to furnish a fidelity bond and to pay the premiums

thereon. The bond was first issued in 1932 and was continued for seven consecutive years thereafter, Nitschke paying the premiums and receiving from the company on his payment each year a certificate of a year's continuation of the bond. The patrons received from Nitschke the amount coming from the receipts of Nitschke's sales until during the last year of the bond when he failed to pay amounts received to the amount claimed.

Nitschke signed the original application for the bond and applied for each continuation. The original application was signed by Nitschke April 30, 1932. Two days later the two persons denominated as trustees for the patrons were called into the office of the local agent of the company at Fond du Lac. They were there told by a clerk in charge of the office that to get the bond issued they should sign a paper we will call a questionnaire which contained a series of questions to which the answers, except as to printed portions, had been already written in by typewriter in blank spaces therefor. The clerk merely told them where to sign and they merely did as told. They did not read the paper. Nor was it read to them. They were not told anything about its contents, nor were they otherwise informed thereof, either before or after signing it, nor were any of the patrons so informed. The questionnaire was not delivered to them, nor does it appear that the bond was so delivered, although if not so delivered it was delivered to the Eldorado bank for them, and kept there with the declarations of continuance. The bond recites that it was "Countersigned at Milwaukee, Wis.," the same day the questionnaire was signed in Fond du Lac by the trustees, by an "attorney-in-fact" of the company. Next above the date line of the questionnaire, just below which are the signatures of the trustees, are three and one-half printed lines in small type reading as follows:

"It is agreed that the above answers are warranties and constitute the basis of and form a part of the consideration of

the bond executed or about to be executed by the Maryland Casualty Company in favor of the undersigned upon the persons above named, and also all continuations or renewals thereof or substitutions therefor, until superseded by other written answers similarly furnished to and accepted by the said company."

The questionnaire is headed:

"An application has been made to this company to issue to you a fidelity bond for Mr. George W. Nitschke as cheese maker in your service. . . .   Before passing on the said application the company must have answers to the following questions :"

The bond itself contains this provision:

"This bond is executed by the company upon the following express conditions which shall be deemed conditions precedent to any right of the employer to recover hereunder:
"First: That the acceptance and retention of this bond by the employer shall be considered as conclusive evidence that the employer consents and agrees to all the terms, conditions, and provisions contained herein. . . ."

The questionnaire or the answers made therein are not expressly made a part of the bond.   The only other reference in the bond to statements made in the questionnaire other than above quoted is—

"All written statements made . . . by the employer in connection with this bond . . . are warranted . . . to be true, and if any such statements shall be found to be untrue in any particular, . . . then this bond shall become void."

The defense is based on the answer to the printed question 12 (a) in this questionnaire which reads:

"At what intervals will applicant's books, accounts, stock and securities be inspected and audited and verified with funds on hand or in bank?"

The answer is: "At least once in every each month."   The words of the above answer "At least once in every" are

printed. The words "each month" are typed on a blank line following the printed words.

It is without dispute that at no time during the seven and the part of the eighth years during the continuance of the bond preceding Nitschke's failure to turn over the embezzled money did the trustees or any of the patrons do any examining or checking of Nitschke's accounts as promised in the answer to the quoted question 12 (a).

By the answer to question 10 (b) of the questionnaire Nitschke was not to be permitted "to retain any balance on hand . . . only [except] his own." It is without dispute that Nitschke was conducting a fox farm, and that he had only the one bank account headed "Highland Cheese Factory" from which he drew checks to pay accounts connected with that business and to pay his personal and family expenses as well as to pay the patrons. It also appears that this account was frequently overdrawn, and that inquiry at the bank would have disclosed this state of affairs. Nitschke did not keep any account of his cheese business and the patrons all knew that he was conducting a fox farm. There was thus a plain failure of the plaintiffs to perform the promises comprised in the answers to questions 10 (b) and 12 (a).

The trial court was of opinion that the terms of the bond and the questionnaire taken together constitute the contract between the plaintiffs and the company. That this is so is plainly evidenced by the stipulation at the end of the questionnaire:

"It is agreed that the above answers . . . constitute the basis of and form a part of the consideration of the bond . . . and also all continuations . . . thereof. . . ."

As the plaintiffs failed to examine and check accounts as they promised they breached their contract and cannot recover thereon, unless they are to be relieved because they neglected to read the questionnaire.

The plaintiffs claim that failure to comply with the promises comprised in the answers to 10 (b) and 12 (a) should be excused because they did not know of those promises, and that they should be excused for not reading the contract under the rule that failure of signers of a release or a like instrument to read it induced by misrepresentations as to its contents made by the released party may be excused and if excusable the instrument is void. But no representations were made by the company or its local agent or the local agent's clerk in the instant case, and the rule relied on is inapplicable. As to the general rule applicable see *Lefebvre v. Autoist Mut. Ins. Co.* 205 Wis. 115, 119, 236 N. W. 684, and the cases there cited. The plaintiffs also contend that the bond is not voided under the rule that false warranties contained in an insurance policy or the application therefor do not void the policy when their falsity is known to the local agent who takes the application or issues the policy. But there were no false statements in the instant bond or the questionnaire as to existing facts. True, the questionnaire refers to the answers to questions as constituting warranties, but that does not make warranties out of promises as to future conduct of the plaintiffs. And if such promises be considered as warranties failure to keep them was not known to the company or its local agent. The plaintiffs' counsel cite *Whinfield v. Massachusetts Bonding & Ins. Co.* 162 Wis. 1, 154 N. W. 632, and *Taluc v. Fall Creek Farmers Mut. F. Ins. Co.* 203 Wis. 319, 234 N. W. 364, in support of these contentions but the facts of those cases are clearly distinguishable from those of the instant case.

*By the Court.*—The judgment of the circuit court is affirmed.