BLAIR STATE BANK, APPELLEE, V. JAMES H. STEWART, IMPLEADED WITH I. C. ELLER, ASSIGNEE, APPELLANT, ET AL.

FILED DECEMBER 8, 1898. No. 8388.

1. Voluntary Assignments: ASSIGNEES. An assignee under a deed of voluntary assignment represents creditors of the assignor only to the extent that he is expressly authorized to do so by statute.

2. Fraudulent Conveyances: RIGHT TO PREFER CREDITORS. A debtor in failing circumstances may, while retaining dominion over his property, pay, or secure, the claims of some of his creditors to the exclusion and detriment of others. Such transactions are valid unless tainted by actual fraud.

3. ———: AUTHORITY OF ASSIGNEE TO ASSAIL CONVEYANCE. A conveyance executed by an assignor before the assignment cannot be assailed by the assignee on the ground that it was made to hinder, delay, or defraud creditors, unless such creditors have previously authorized an action to be brought for that purpose.

4. Unrecorded Mortgages. An unrecorded mortgage is valid and effective between the parties thereto from the date of its execution; and it is not void as to creditors generally, but only as to creditors whose deeds, mortgages, or other instruments have been first recorded.

5. **Voluntary Assignments:** PREVIOUS CONVEYANCES. Conveyances made more than thirty days before the execution of a deed of voluntary assignment are not within the inhibition of either section 42 or section 43 of the assignment law. (Compiled Statutes, ch. 6.)

6. **Indemnity Mortgage:** FORECLOSURE: APPEAL: PARTIES: TRANSCRIPTS. Where, in an action by a surety to foreclose an indemnity mortgage, it appears from the pleadings that the proceeds of the sale of the mortgaged property are to go to the creditor, who is also a party to the action, such creditor is so interested in the controversy that he may, for his own benefit, prosecute an appeal from a judgment adverse to the surety.

APPEAL from the district court of Washington county. Heard below before BLAIR, J. *Reversed in part.*

*Walton & Mummert,* for appellant.

*Osborn & Aye, Clark O'Hanlon,* and *Davis & Howell, contra.*

SULLIVAN, J.

This action was brought by the Blair State Bank to foreclose a mortgage given to it by James H. Stewart upon his undivided one-half interest in certain real estate in the city of Blair. Grant Stewart, who held a junior mortgage on the same property, was made a party defendant and answered, asserting his lien and demanding a foreclosure of the same. I. C. Eller is the successor of the sheriff of Washington county, to whom James H. Stewart made a voluntary assignment for the benefit of his creditors on July 30, 1895. The mortgage to the bank was given to secure the repayment of money borrowed at the time of its execution. The mortgage to Grant Stewart was given as partial indemnity against possible loss resulting from his suretyship for his brother, James H. Stewart, upon sixteen notes executed to said bank and amounting in the aggregate to $15,375. These notes and the indemnity mortgage were made on the same day and were related parts of the same transaction. Although both mortgages were executed on October 27,

1894, they were not filed for record until a few hours before the assignment was made. The validity of these mortgages is assailed by the assignee on the ground that they were made and delivered in contravention of the general assignment law, and also on the ground that they were executed in violation of the statute forbidding fraudulent conveyances of property.

The position occupied by an assignee, under a deed of assignment, with reference to the assignor and the assignor's creditors, has been fully and definitely settled by the decisions of this court. In *Lancaster County Bank v. Gillilan*, 49 Neb. 165, the earlier cases in this state were reviewed and the conclusion reached that the assignee is essentially the representative of the assignor, and may assert on behalf of creditors only such rights as the statute expressly confers upon him. In the second point of the syllabus the doctrine of the case upon this subject is stated as follows: "Except as authorized by statute, the assignee under a voluntary assignment for the benefit of creditors may not assert rights beyond those which the assignor might assert in the absence of the assignment, the assignee, except as otherwise provided, representing the assignor and not the creditors." It being settled, then, that the assignment act gave to the assignee the only authority which he possessed to attack conveyances made by Stewart prior to the assignment, we proceed to inquire whether the mortgages in question were within the ban of the statute. The assignee relies on sections 42 and 43 of chapter 6, Compiled Statutes 1897. Section 42 has reference to transfers or conveyances made within thirty days prior to the assignment, with a view of preventing the property transferred or conveyed from coming to the assignee in insolvency, or for the purpose of preventing such property from being distributed under the law relating to insolvency, or to defeat, hinder, or evade, in any way, the operation of that law. Section 43 relates to acts done within thirty days before the assignment, whereby any creditor is pre-

ferred "in fraud of the laws relating to insolvency." That the mortgages in suit do not come under the inhibition of these sections of the act is entirely clear, for, according to the undisputed evidence, they were made at a time when an assignment was not contemplated by any of the parties. By the common law, Stewart possessed the right, while retaining dominion over his property, to apply it as he saw fit in payment of his debts, or in securing some of his creditors to the exclusion of others. The general assignment law, however, trenches upon this right. It condemns, under certain circumstances, and during a period of thirty days prior to the making of an assignment, every preference made to evade the assignment law, or to prevent the debtor's property from being distributed under its provisions. The transactions here considered occurred nearly nine months before the assignment to the sheriff of Washington county. It is probable that Stewart did not at that time consider himself insolvent, and it is quite certain he entertained no intention of taking advantage of the assignment law; consequently the mortgages were valid and created enforceable liens upon the property.

The assignee, however, contends that the mortgages did not become effective as to creditors until they were recorded, and that, within the knowledge of all the parties, an assignment was then not only contemplated but determined upon. This contention is based on section 16, chapter 73, Compiled Statutes 1897, which provides: "All deeds, mortgages, and other instruments of writing which are required to be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages, and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice, whose deeds, mortgages, and other instruments, shall be first recorded; *Provided,* That such deeds, mortgages, or

instruments shall be valid between the parties." That the mortgages were valid between the parties thereto from the date of their execution will, of course, be conceded; and under the provisions of the section quoted it is perfectly plain that they were not void as to creditors generally, but only as to creditors whose deeds, mortgages, or other instruments should be first recorded. Such was the construction given the statute in *Galway v. Malchow*, 7 Neb. 285, and approved in later cases. (*Mansfield v. Gregory*, 8 Neb. 432; *Harral v. Gray*, 10 Neb. 186; *Hubbart v. Walker*, 19 Neb. 94; *Sheasley v. Keens*, 48 Neb. 57.) The general creditors of James H. Stewart can, therefore, claim nothing under section 16. They are not within its terms. It is not applicable to them.

In regard to the claim that the mortgages should be adjudged void on the ground that their suppression constituted a fraud on creditors who dealt with Stewart on the assumption that his realty was unincumbered, it is only necessary to remark that the assignee has not shown, by either pleading or proof, that he is in an attitude to attack the conveyances on that theory. Section 30 of the assignment law (Compiled Statutes, ch. 6) prescribes the conditions on which the assignee may invoke the aid of the court for the cancellation of conveyances made to hinder, delay, or defraud the creditors of the assignor in the collection of their claims against him. It is there provided that the assignee may institute an action to annul a fraudulent conveyance "upon the direction in writing of a majority in number of the creditors owning two-thirds in amount of all the claims proven against the estate at the time fixed for proving the same." The assignee in this case was without such direction from the creditors and could not lawfully move in the mater. The judgment in favor of the Blair State Bank is affirmed and the judgment against Grant Stewart is reversed. The cause is remanded to the district court with direction to render a decree foreclosing the mortgage of Grant Stewart and for such further proceed-

ing as may be necessary to the execution of both judgments.

Since the foregoing was written the assignee has filed an additional brief in which he insists that Grant Stewart has not appealed from the judgment and is, therefore, not entitled to any relief in this court. A stipulation relating to the settlement and use of the bill of exceptions recites that both Eller and Grant Stewart are severally prosecuting an appeal. It is true that Grant Stewart has not appeared here demanding a reversal of the judgment against him, but the bank, claiming to be the equitable owner of the indemnity mortgage, does ask for that relief. In his answer Grant Stewart alleges the facts in regard to the execution of the mortgage, shows that its conditions have been broken, and that by its terms he is entitled to a decree of foreclosure. He then asks that the mortgaged property be sold and that the proceeds of the sale, after paying off the senior lien, be paid to the bank and credited upon the notes signed by him as surety for his brother. In its reply the plaintiff asserts its claim to the proceeds of the sale under the second mortgage and concedes the right of Grant Stewart to have the same credited according to the prayer of his cross-petition. It is thus established by the pleadings that the bank is the real party in interest and therefore entitled to prosecute an appeal. It is an elementary principle of equity jurisprudence that the creditor is the equitable owner of, and entitled to enforce for his own benefit, any securities with which the principal debtor has indemnified his surety. The reason is that such securities are always given to insure the payment of the debt, and that consequently the surety holds them in trust for that specific purpose. (*Moses v. Murgatroyd*, 1 Johns. Ch. [N. Y.] 119; *Phillips v. Thompson*, 2 Johns. Ch. [N. Y.] 418; *Scibert v. True*, 8 Kan. 52; *New Bedford Institute for Savings v. Fairhaven Bank*, 9 Allen [Mass.] 175; *Thornton v. National Exchange Bank*, 71 Mo. 221; *Rice's Appeal*, 79 Pa. St. 168; *Osborn v. Noble*, 46 Miss. 449.)

The entire record is here, and any of the parties desiring to prosecute a cross-appeal has a right to do so without filing a second transcript. We adhere to the conclusion above announced.

JUDGMENT ACCORDINGLY.