JOHN H. LONGFELLOW, RECEIVER OF THE STATE BANK OF WAHOO, APPELLEE, v. E. H. BARNARD, APPELLANT.

FILED MAY 17, 1899. No. 8902.

1. **Unincorporated Bank.** An unincorporated bank, exclusively owned by a private individual, is not a legal entity, even though its business be conducted by a president and cashier.

2. ————: DISPOSAL OF ASSETS. In such case the assets of the bank represent merely the portion of the owner's capital invested in banking, and he may lawfully dispose of them to pay or secure the just claims of any of his creditors.

3: **Fraudulent Vendee**: MORTGAGES. A fraudulent vendee of property may lawfully mortgage the same to secure a *bona fide* creditor of the fraudulent vendor. The consent of the vendor to such disposition of the property is implied in the conveyance by which he invested the vendee with the title.

4. **Mortgages**: CONSIDERATION. A pre-existing debt already due is a sufficient consideration for the execution of a mortgage securing the same.

5. ————: INDEMNITY. A mortgage given to indemnify a surety or guarantor is in legal effect a security to the owner of the debt, even though he did not originally rely on it or know of its existence.

6. **Fraudulent Mortgage**: ASSIGNMENT: CONSIDERATION. An assignment of a fraudulent mortgage to secure a creditor of the mortgagor is valid without any consideration moving from the assignee to the assignor. Such a transaction is, in substance, a release of the fraudulent mortgage and the execution of a new mortgage by the debtor to his creditor.

7. **Merger**: ESTATES: INTENTION. Whether a merger results from the possession by the same person at the same time of two estates of different rank in the same property depends generally on the intention of the owner.

8. **Receiver**: EFFECT OF APPOINTMENT. The appointment of a receiver is in the nature of an equitable execution. By it the court is able to reach only the actual interest of the debtor in the property impounded.

APPEAL from the district court of Saunders county. Heard below before SEDGWICK, J. *Reversed.*

*Munger & Courtright*, for appellant.

*Good & Good*, contra

SULLIVAN, J.

This action was instituted in the district court by the appellee against the appellant to cancel and annul a mortgage upon lot 7 and the west half of lot 8 in the county addition to the city of Wahoo. The defendant answered, asserting the validity of his mortgage and demanding a foreclosure of the same. The decree granted the relief sought by the petition and dismissed the counter-claim. Barnard brings the record here for review by appeal.

Most of the essential facts are either admitted or specifically found by the trial court. The lots were originally owned by W. H. Dickinson and are covered by a large brick building, one room of which was used and occupied for some years prior to 1893 by the State Bank of Wahoo. The bank was not incorporated, but was a private institution owned and managed by Dickinson, who was at the same time conducting a real estate, loan, and insurance business. He was also interested in an electric light plant and owned an elevator and coal yard. On January 24, 1893, Dickinson, being insolvent and having absconded, the bank closed its doors and soon afterwards passed into the hands of a receiver appointed under the authority of section 14, chapter 37, page 397, Session Laws 1889. In November, 1892, Dickinson, for the purpose of defrauding his creditors, executed to his sister-in-law, Harriet E. Adams, the mortgage in suit, and about a month later he made a fraudulent conveyance to her of the legal title to the mortgaged property. The deed contained a recital to the effect that the grantee had assumed the payment of her own mortgage. Both instruments were filed for record at the same time. Prior to the events just recounted Dickinson, in some transaction not connected with the banking business, became indebted to Barnard in the sum of $2,000. This indebtedness was evidenced by a promissory note which Barnard had sold to the First National Bank of Fremont

with a guaranty of payment at maturity. The note became due on January 1, 1893, and, being unpaid, Barnard went to Wahoo with a view of obtaining security or payment. He was unable to see Dickinson, but he obtained from Miss Adams, as protection to his guaranty, an assignment of her mortgage and the note which it was given to secure, and he agreed, in consideration of receiving the collateral, to take up the note which was still held by the Fremont bank and carry it himself for some indeterminate time. The defendant did afterwards take up the note according to his agreement, and now seeks to obtain payment by foreclosure of the Adams mortgage. The receiver is in possession of the property. He holds the legal title, which was conveyed to him by Miss Adams in recognition of his superior right and subject only to such incumbrances as the courts of this state might adjudge to be valid. The trial court found that Barnard knew, or ought to have known, that the conveyances by Dickinson to Adams were made for the purpose of defrauding creditors. This finding seems to be warranted by the evidence, and we shall, therefore, in the further consideration of the case assume its correctness.

With this statement of the salient facts we proceed to examine what we deem to be the decisive points discussed in the briefs of counsel. The validity of the mortgage in the hands of the defendant is the cardinal question which each of the parties, in demanding affirmative relief, presents for decision. The appellee insists that the State Bank of Wahoo was a *de facto* corporation, and that the mortgaged property, being a bank asset, was primarily liable for the payment of claims growing out of the bank business. We cannot accept this view, for it is obviously based on a false assumption. The business of the bank was conducted, it is true, by a president and cashier; but articles of incorporation were never adopted. It had no board of directors. It never pretended to possess or exercise corporate powers. It was incapable of contracting debts or of owning and holding property.

In its reports to the state banking board it was represented as a private concern, of which W. H. Dickinson was the sole proprietor. Certainly it was not in fact a legal entity, and we know of no reason why the owner, or those in privity with him, should be precluded from asserting the truth in regard to the matter. The assets of the bank represented merely the portion of Dickinson's capital invested in banking, and its liabilities represented the indebtedness incurred by Dickinson as a banker. The assets were his, and he might dispose of them as he pleased, subject, of course, to the power of creditors to reclaim them if the disposition should be in fraud of their rights. The liabilities were also his, and for their satisfaction all of his property, not exempt by law, was equally liable to seizure and sale. It results from these considerations that Barnard, before the appointment of the receiver, might have obtained from Dickinson security for the $2,000 note in the form of a mortgage on the real estate in controversy; and he might also, with Dickinson's consent, take as security an assignment from Miss Adams of the mortgage in suit. Such a transaction would be, in substance, a restoration of the property to the owner and the execution by him of a mortgage thereon to secure the just claim of a creditor. (*Murphy v. Briggs*, 89 N. Y. 446.) It would effectually purge the mortgage of the fraud with which it was originally tainted and make it a valid and enforceable security. This proposition is amply sustained by authority. (*Oriental Bank v. Haskins*, 44 Mass. 332; *Crowninshield v. Kittridge*, 48 Mass. 520; *Thomas v. Goodwin*, 12 Mass. 140; *Hutchins v. Sprague*, 4 N. H. 469; *Buller v. White*, 25 Minn. 432; *Brown v. Webb*, 20 O. 389; *Dolan v. Van Demark*, 35 Kan. 304.) In the cases here cited the property conveyed to defraud creditors was afterwards, with consent, or by the direction, of the debtor, applied to the payment of his debts. They were cases in which he exercised, through the agency of the fraudulent transferee, his undoubted right to pay or secure some of his creditors to the preju-

dice of others. The case at bar is somewhat different, and we were at first inclined to think that Miss Adams had no implied power to make either the defendant or the Fremont bank a preferred creditor; but the judicial utterances, we find, are to the effect that she had. In *Dolan v. Van Demark*, *supra*, Valentine, J., delivering the opinion of the court, said: "While, generally, a fraudulent vendee cannot, as against the creditors of the fraudulent vendor, sell, assign, or transfer the property to a third person who has notice of the fraud, nor transfer or assign the same to even a person who has no such notice, where such transfer or assignment is merely to pay a preexisting debt of the fraudulent vendee, yet such fraudulent vendee may make a valid sale of the property to a *bona fide* purchaser without notice of the fraud, or may, with the consent of the fraudulent vendor, and probably without his consent, make a valid transfer or assignment of such property to a creditor of the fraudulent vendor, either in payment, or partial payment, of a *bona fide* debt of the fraudulent vendor, or as security for such debt, and whether such creditor has notice or not of the prior fraudulent sale." In *Webb v. Brown*, 3 O. St. 246, which was a contest between creditors, it was distinctly held that the fraudulent vendee might, without authority from his vendor, prefer one of the latter's creditors. The court said: "A conveyance by a fraudulent vendee of goods in payment or security of the vendor's debt requires no other assent than that which is contained in the vesting of the vendee with all the vendor's right in the property." We accept this as a correct statement of the law, and accordingly hold that the assignment from Miss Adams was just as effectual as though it had been made with Dickinson's express consent.

But it is contended by the receiver that Miss Adams had no mortgage to assign; that it was merged in the legal estate and ceased to exist when she became the owner of the fee. Upon this point the trial court made no finding, but the evidence, we think, pretty conclusively

shows that the mortgage was not extinguished. Whether a merger results from the possession by the same person at the same time of two estates of different rank in the same property, is generally a question of the owner's intention. (*Mathews v. Jones*, 47 Neb. 616; *Wyatt-Bullard Lumber Co. v. Bourke*, 55 Neb. 9.) Miss Adams agreed, in the deed from Dickinson, to pay this mortgage. She filed both instruments for record at the same time and afterwards assigned the mortgage as security. These facts clearly evince an election by her to keep it alive. (*Ætna Life Ins. Co. v. Corn*, 89 Ill. 170; *Kellog v. Ames*, 41 N. Y. 259.)

The receiver asserts that the assignment of the mortgage was void for want of a valuable consideration to support it. We do not think it was. The transaction, as we have already pointed out, was, in substance and legal effect, the execution by Dickinson to Barnard of a mortgage to secure the payment of the $2,000 note. (*Murphy v. Moore*, 23 Hun [N. Y.] 95; *Seymour v. Wilson*, 19 N. Y. 417.) While it was primarily intended to indemnify Barnard against loss by reason of his guaranty, it was, as a matter of law, a security to which the First National Bank of Fremont might rightfully resort for the payment of its claim, even though it did not rely on it or know of its existence. (*Blair State Bank v. Stewart*, 57 Neb. 58, 77 N. W. Rep. 370; *Seibert v. True*, 8 Kan. 52; *New Bedford Institution for Savings v. Fairhaven Bank*, 9 Allen [Mass.] 175; *Moses v. Murgatroyd*, 1 Johns. Ch. [N. Y.] 119.) The existence of the debt and the guaranty of its payment made the assignment valid without any other consideration. The assignor was entitled to no consideration. She parted with nothing that was lawfully hers. She merely transferred Dickinson's property to pay Dickinson's debt. That a pre-existing debt, already due, is a sufficient consideration for the execution of a mortgage securing the same is a doctrine well-established by the decisions of this court. (*Turner v. Killian*, 12 Neb. 580; *Henry v. Vliet*, 36 Neb. 138; *Chaffee v. Atlas Lumber*

*Co.*, 43 Neb. 224.) And it is equally well settled that the liability of a principal debtor to his surety or guarantor is a valuable consideration for the execution to him of an indemnity mortgage. (*Blair State Bank v. Stewart, supra; Stevens v. Bell*, 6 Mass. 342; *Buffum v. Green*, 5 N. H. 71; *Williams v. Silliman*, 74 Tex. 626; 6 Am. & Eng. Ency. Law [2d ed.] 709.) Had Dickinson himself made the mortgage to defendant, he certainly could not successfully resist foreclosure on the ground that there was no legal consideration. Neither can the plaintiff acting as a representative of creditors. The appointment of the receiver was in the nature of an equitable execution. By it the court was able to reach only the actual interest of the debtor in the property—the interest which the creditors themselves might have reached with an execution issued on a judgment at law in their favor. The judgment is reversed and the cause remanded with direction to the district court to render a decree foreclosing the defendant's mortgage as prayed.

REVERSED.