MARYLAND CASUALTY COMPANY, Appellant, vs. HJORTH and others, imp., Respondents.

*February 12—June 22, 1925.*

*Principal and surety: When relationship arises: Fidelity bond issued at request of employee: Payment of loss by surety: Reimbursement by principal: Note given as indemnity: Consideration: Trial: Verdict of jury on conflicting evidence.*

1. Where the question whether a surety refrained from canceling a bond in consideration of the execution and delivery of the note sued on was submitted to the jury under a square conflict in the evidence, a motion to change the answer was properly denied.   p. 273.
2. When an indemnity company, at the request of an employee, guarantees his fidelity to his employer, the relation of principal and surety is created, notwithstanding the rule that such a guaranty is a contract of insurance.   p. 274.
3. A promise is implied by law on the part of the principal to indemnify the surety for losses actually sustained, the principal becoming a debtor of the surety from the time the surety makes payment.   p. 274.

4. The liability of a surety to pay the debt of the principal constitutes a sufficient consideration for security turned over to the surety by the principal before a breach has occurred. p. 274.
5. A note delivered by the employee to the surety to indemnify the surety from loss after default of the employee toward his employer had occurred, but before payment had been made by the surety, was based on a sufficient consideration, as the liability of the surety had arisen, and it was known the principal could not pay and the surety would have to. p. 275.
6. Where the surety paid the shortage of the employee and sued on the note when due, the extension of time for payment by the employee to the surety by way of reimbursement was a sufficient consideration to support the note as to all who had signed it. p. 275.

APPEAL from a judgment of the municipal court of Racine county: E. R. BURGESS, Judge. *Reversed.*

Action to recover on a promissory note. Defense, no consideration. It appears that on or about November 8, 1920, the defendant *Nels Hjorth* entered into a contract with the Jennison Mills Company whereby he was employed to act as its agent for the sale of its flour and mill products in the cities of Racine and Kenosha. This contract provided that *Hjorth* should report, account, and pay for the flour sold by him at the end of each week, all flour and proceeds thereof to remain the property of the Jennison Mills Company until fully paid for. It was provided in and by the terms of said contract that *Hjorth* should furnish to the Jennison Mills Company a bond in the sum of $10,000 conditioned for the honest and faithful performance on his part of the terms and conditions of the contract. Thereafter *Hjorth* made application to the plaintiff for the required bond, and the plaintiff executed its bond to the Jennison Mills Company guaranteeing *Hjorth's* faithful performance of his agreement. The bond so executed provided "that the company [meaning plaintiff] may cancel this bond at any time by giving fifteen days' notice in writing to the employer, and the company shall not be liable for any loss resulting from

any act or acts committed by the employee after the expiration of said fifteen days."

Along about the 1st of March, 1921, *Hjorth* became aware of the fact that he was short in his accounts. He notified the milling company and a representative of that company came down, checked up his accounts and took an inventory of the stock on hand, from which it appeared that *Hjorth* was short in his accounts in the neighborhood of $4,000. *Hjorth* immediately called on one Coleman, who was the agent of the plaintiff company at Milwaukee, and advised him of the situation. Coleman demanded security from *Hjorth*, and negotiations to this end followed for a period of several days, resulting in the execution by *Hjorth* to the plaintiff of a promissory note for the sum of $10,000, due twelve months after date. This note was signed by *Hjorth* and the defendant *John Smader*, and the payment of the note was guaranteed by the defendant *Albert J. Hess*. The plaintiff paid the amount of *Hjorth's* shortage to the Jennison Mills Company, which was somewhat in excess of $4,000, and on or about March 24, 1922, brought this action against *Smader* and *Hess* to recover on said promissory note. *Hjorth* and *Smader* answered alleging, among other defenses, that the note was given without any consideration. The defendant *Hess* did not answer.

Upon the trial it was contended by the plaintiff that the note was given to induce the plaintiff to continue on the bond, and that its consent to continue on the bond constituted a consideration for the note. Upon this feature of the case the court submitted this question to the jury: "Did the plaintiff, in consideration of the execution and delivery of the note in question by the defendants, refrain from canceling its bond?" This was answered No. This was the only question propounded to the jury with reference to a consideration for the note. All other questions of the special verdict were answered in plaintiff's favor. After the verdict the plaintiff moved to change the answer to said question from No to

Yes, and for judgment notwithstanding the verdict. Both motions were denied by the court, and judgment was rendered in favor of the defendants, from which the plaintiff brings this appeal.

For the appellant there was a brief by *Simmons, Walker & Wratten* of Racine, and oral argument by *Charles F. Wratten* and *M. E. Walker*.

For the respondent *Smader* there was a brief by *Foley & Brach,* and the cause was argued orally by *J. J. Foley* and *J. Allan Simpson,* all of Racine.

The following opinion was filed March 10, 1925:

OWEN, J. The court was right in denying the motion to change the answer to the question by which the jury found that the plaintiff did not refrain from canceling its bond in consideration of the execution and delivery of the note. There was a square conflict in the evidence on this question between *Hjorth* and Coleman, the agent of the plaintiff, who conducted the negotiations leading up to the execution of the note, and, besides, it appears without dispute that the contract between *Hjorth* and the Jennison Mills Company was terminated prior to the execution of the note, and no reason appears for a desire on the part of *Hjorth* for a continuation of the bond. The answer of the jury to this question cannot be disturbed.

Upon a consideration of the record pertaining to the further motion of the plaintiff for judgment notwithstanding the verdict, we come to a different conclusion. While it is universally held that the contract of an indemnity company guaranteeing to an employer the fidelity of employees is a contract of insurance (*First Nat. Bank v. United States F. & G. Co.* 150 Wis. 601, 137 N. W. 742; *Whinfield v. Massachusetts B. & Ins. Co.* 162 Wis. 1, 154 N. W. 632; 25 Corp. Jur. 1089, and cases there cited), such holdings have generally been in cases involving the rights of the insured against the indemnity company and have related to a con-

struction of the contract of insurance. In such cases it is held that when the indemnity company pays the amount of the shortage it is subrogated to the rights of the employer against the employee. Manifestly the indemnity company acquires no right of indemnity or security against the employee until it has paid the claim of the employer against the employee and been subrogated to the rights of the employer against the employee, in cases where the contract of insurance or indemnity was not written at the request of the employee. In such cases, there being no contractual relations between the employee and the indemnity company, the indemnity company acquires no rights against the employee until subrogation takes place. But is that true where the contract of indemnity is entered into at the request of the employee? Although there is a dearth of authority upon this question, it would seem that where an employee makes application to an indemnity company to guarantee his fidelity to his employer, the relation of principal and surety, or of principal and guarantor, is created just as much as though the application had been made to a private individual and such private individual had executed a bond to the employer. We so hold.

It is well established that the law implies a promise on the part of the principal to indemnify his surety for losses actually sustained. 21 Ruling Case Law, 1097. Undoubtedly the principal is a debtor of the surety from the time the surety makes payment. 21 Ruling Case Law, 1120. The authorities are not in agreement as to the exact relation existing between the principal and surety after the execution of the contract and before payment by the surety. Some cases hold that the relation of debtor and creditor exists from the date of the contract of suretyship, while others hold that this relation does not arise until the time of payment. 21 Ruling Case Law, 1120. But whatever the exact relation, it is well supported by authority that, after the contract of suretyship has been entered into and before a

breach, the liability of the surety to pay the principal's debts constitutes a sufficient consideration for security turned over to the surety by the principal. 32 Cyc. 240, and cases there cited.

In *Momsen v. Noyes,* 105 Wis. 565, 81 N. W. 860, this court said:

"The principle is well settled that the implied contract of the principal to indemnify the surety against loss takes effect from the time when the surety signs the bond or obligation, and not from the time when the surety actually pays the principal's debt. The actual payment simply fixes the amount."

In the instant case the liability of the surety had actually arisen. The default of the principal had actually occurred. It was known that the principal could not pay and that the surety would have to. We have no hesitancy in holding that the situation furnished an ample consideration for security given by the principal to the surety to indemnify it from loss. *Longfellow v. Barnard,* 58 Neb. 612, 79 N. W. 255; *Harlan Co. v. Whitney,* 65 Neb. 105, 90 N. W. 993; *Bibb v. Hitchcock,* 49 Ala. 468, 20 Am. Rep. 288; *Swift v. Crocker,* 21 Pick. 241.

It cannot be doubted that if *Hjorth* had deposited with the bonding company the notes of third parties as collateral security or had executed to it a mortgage upon property, the circumstances then existing afforded a sufficient consideration for the giving of such additional security. Perhaps the consideration supporting this note is not quite so apparent, but we think it clear nevertheless. It is true that the giving of the note did not wipe out the original indebtedness (*Griffin v. Long,* 96 Ark. 268, 131 S. W. 672, 35 L. R. A. N. s. 855), but it did extend the time of payment, and this constituted a sufficient consideration as to all other defendants for the giving of the note. *Johnston H. Co. v. McLean,* 57 Wis. 258, 15 N. W. 177; *Goll v. Fehr,* 131 Wis. 141, 111 N. W. 235; *Holmes v. Webb,* 166 Wis. 280, 164

N. W. 1007. The motion of the plaintiff for judgment notwithstanding the verdict should have been granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff.

A motion for a rehearing was denied, with $25 costs, on June 22, 1925.