115 P.2d 622

## KEY v. GEORGE E. BREECE LUMBER CO.

### No. 4589.

Supreme Court of New Mexico.

July 23, 1941.

George A. Shipley, of Alamogordo, for appellant.

Dailey and Rogers, of Albuquerque, for appellee.

SADLER, Justice.

This is a representative suit for a declaratory judgment. It was instituted by the plaintiff as president of Lumber and Sawmill Worker's Union No. 2600 of Alamogordo, United Brotherhood of Carpenters and Joiners of America, "on behalf of each of the members thereof, and in behalf of each employee like situated, for the reason that the question involved in this cause of action is one of common and general interest to each member of said Union, and to each and every em-ployee in the lumber industry in Otero County, New Mexico, and for the further reason that it is impracticable to bring each individual member of said Union before the court in this complaint." The complaint named as defendant, the George E. Breece Lumber Company, a New Mexico corporation, having its principal place of business in Bernalillo County, New Mexico.

After setting forth in his complaint the defendant's refusal to pay the schedule of wages provided by a certain amended agreement, hereinafter mentioned, the plaintiff further alleged:

"That there has resulted and will in the future result, proximately, from the above alleged acts done by the defendant the following damages to the members of plaintiff union, and all employees like situated in the lumber industry in this state:

"A   That the said employees will not have and receive the hourly wage agreed upon by defendants to be paid said employees.

\*     \*     \*     \*     \*     \*

"D. That the act of the defendants above alleged, arbitrary and capricious in nature, is anticipatory of a breach by defendant of each and every other covenant in said Exhibit 'A' contained, and said employees will be deprived of the mutual covenants relating to collective bargaining, hours of labor, conditions of labor and other covenants looking for a promotion

of the separate and mutual interests of all parties to said agreement."

All of the material issues tendered by the plaintiff's complaint were denied by defendant in the answer filed. In addition, it pleaded specially that the agreement relied upon by the plaintiff was never applicable to its operations either at Alamogordo or in Otero County and affirmatively alleged that neither the plaintiff in his representative capacity nor his Union had sufficient interest in the contract involved to maintain an action thereon; that such contract was not entered into for the benefit of plaintiff in his representative capacity, nor for the benefit of his Union or any member thereof as such.

Sawmill Workers Union No. 2867, United Brotherhood of Carpenters and Joiners of America, with headquarters in Albuquerque, Bernalillo County, New Mexico, was organized and existing prior to the first day of December, 1938. Lumber and Sawmill Workers Union No. 2600, of Alamogordo, Otero County, New Mexico, United Brotherhood of Carpenters and Joiners of America, was formed and organized about the 26th day of June, 1939. On or about December 1, 1938, Local Union No. 2867 and the defendant entered into the contract sued on herein, which by its terms was in effect for a period of eighteen months from its date. Thereafter, on June 19, 1939, the original contract was amended as to the scale of wages to be paid by the defendant for the period from May 16, 1939, to May 15, 1940.

The original agreement of December 1, 1938, in addition to the wage scale provided for, incorporated the usual covenants of a collective bargaining agreement, such as provision for seniority rights, hours of labor, working conditions, arbitration and other matters conducive to a complete understanding between employer and employee.

The defendant having refused to pay the members of Local Union No. 2600 (all of whom were employees of defendant), according to the wage scale set up in the amended contract or to recognize the amended contract as applicable to them or to defendant's operations at Alamogordo, as already stated, this suit for declaratory judgment resulted.

After an extended trial in the course of which many witnesses were examined, the court entered its judgment in favor of the plaintiff, the decretal portions of which read as follows: "It is now, therefore, ordered, adjudged and decreed pursuant to the provisions of Chapter 143, Laws of New Mexico, 1935, that the agreement of December 1, 1938, plaintiff's Exhibit 'A', and the agreement of June 19, 1939, plaintiff's Exhibit 'F', apply to the operations of the defendant, The George E. Breece Lumber Company, in Bernalillo County, New Mexico, and Alamogordo, Otero County, New Mexico; and, further, that the employees of defendant corporation are entitled to have paid to each of them for the labor performed by them the wage scale provided for in

Exhibit 'F', for the classifications provided therein, from May 16, 1939, to May 15, 1940."

Among other things the agreement provided:

"1. Jurisdiction:

"(a) The Company agrees to bargain and deal with the Union as the sole collective bargaining agency for all employees in its operations in New Mexico; of-, fice workers, superintendents and foremen to be excepted.

"(b) The Company agrees to employ only members in good standing of the Union. Provided, however, that non-union men may be employed when qualified Union members are not available promptly.

"(c) Such newly hired employees shall be subject to a probationary period of fifteen days, after which time they shall become members of the Union. They shall, however, obtain a working card from the Union representative before going to work, in conformity with the Union rules and regulations."

The big issue at the trial, upon which many witnesses were examined and much testimony was taken, was whether the agreement covered operations of defendant in Otero County. The trial court found that it did, that it was intended to apply there and that the wage scale stipulated in the amended contract was entitled to be so recognized and given effect by the defendant. No error is assigned here upon the trial court's finding in this re-spect. Indeed, before us the entire argu-. ment is directed, not to an erroneous determination by the trial court of the cause of action pleaded and tried, but rather to a claimed incapacity on plaintiff's part to invoke the decision of the trial court on such cause of action. It is the defense last pleaded in the answer filed, termed defendant's "fourth and further answer", the evidence to support which was developed on cross-examination of the plaintiff while testifying as a witness in his own behalf. Nevertheless, if good, it affords a complete answer to the cause of action as urged by and in the name of this plaintiff. Hence, it invites our earnest consideration.

The argument supporting the error claimed in the trial court's holding that plaintiff had sufficient interest to entitle him to maintain the suit rests on his admission on cross-examination that he was receiving the same wage provided by the contract, which defendant refused to recognize as applicable, for the position he occupied. Here is a transcript of the testimony:

"Q. You don't contend at all, Mr. Key, that you have any interest whatever in this suit, do you? A. Do you mean any money coming?

"Q. Financially, yes. A. No.

"Q. As far as the relations between you and the Breece Lumber Company under your personal status at the time this suit was filed, you don't contend but what

they are paying you all that they have agreed to pay under any contract with reference to employment in Alamogordo? A. I would like to relate a little instance: On the 1st day of December, 1938, the Company started paying me 69¢ an hour. I continued under that rate until the 1st of March, and in the condition that the mill was in, and myself being the only man, it took a lot of over time, and Mr. Williams said that Col. Breece said he wasn't going to pay me 69¢ an hour any more, because I was making overtime, and he would pay me $150.00 a month; and, Mr. Williams added that I would have to keep it up if it took day and night.

"Q. You are working now for 69¢ an hour? A. Yes.

"Q. And that is the scale that is in operation in Albuquerque? A. Yes.

"Q. And, as you stated, you don't consider that you, personally, have any interest in this suit? A. No."

■ This testimony came in on the presentation of plaintiff's case in chief. When he rested, the defendant moved to dismiss for a lack of interest in plaintiff to maintain the suit. The motion was overruled and correctly, we think, for reasons so well put by the trial judge in ruling on the motion to dismiss. He stated:

"The Court: As I said before, the way I look at it, this man, as an employee, may have a definite interest in that contract, even though he today is receiving, and has been receiving, exactly the same rate of pay he would under the wage agreement, there would be nothing to prevent the Company from changing it tomorrow to 50¢. The contract, if applicable, would protect him against that change. That is his present interest in that contract; and, the question of seniority rights, and matters of that kind. He could not be let out, under the contract, if he was older in point of service than some other man, whereas, if there wasn't that contract, and they were cutting down their force, he might be the one to lose his job instead of the other fellow, in spite of the length of service; although it may be that it won't affect him, as a matter of dollars and cents. And, I think for that reason you can't measure his interest just by the rate of pay he would get one way or the other; * * * Without the wage scale he does not know whether he will get the same rate of pay tomorrow; he does not know whether he will be fired tomorrow; he has certain interests that are protected that would not be otherwise. For that reason the Court will deny the motion."

Obviously, the plaintiff is not without interest entitling him to maintain the suit, if with each pay-check handed him in the exact amount provided by the wage scale asserted, the defendant in effect says: "The fact that the wage paid you is the same is a matter of grace *outside* the contract—not a matter of right *under* it." In other words, by simply conforming the wage to the contract in a given and isolated instance, the defendant does not successfully challenge the personal interest, even

of the workman thus paid, in the enforcement of a contract whose existence or applicability the defendant denies.

Touching the significance sought to be given plaintiff's admission on cross-examination that he was without personal interest in the matter, the trial judge correctly appraised the so-called admission, when he said: "What he (plaintiff) meant was that he was getting the same amount of money, 69¢ an hour, and would get the same amount of money under that agreement. I think that is all he meant by the statement that he had no personal interest in the case."

Our conclusion regarding plaintiff's interest is an answer to defendant's further contention that an actual controversy does not exist between the plaintiff and the defendant within L.1935, c. 143, authorizing suits for declaratory judgments. The argument is not so much that a controversy does not exist between the defendant and a plaintiff with an interest but rather that this plaintiff is without an interest. Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027.

But it is said, in presenting the next claim of error, even though as a member of Local Union No. 2600 the plaintiff for the reason already given may be considered as having an interest, and even though it be conceded (as the trial court held) that the agreement covers operations in Otero County, still the plaintiff cannot prevail, because members of said Union as such are not "direct and primary third party beneficiaries" under the contract sued on. We believe we have fairly stated the defendant's contention under this point.

The defendant's argument rests on a finding made by the trial court at its request that: "The employees of the George E. Breece Lumber Company in its operations in New Mexico, except office workers, superintendents and foremen, are the third parties beneficiary under the contract, copy of which is attached to the complaint herein as Exhibit A-1."

No clearer statement of defendant's theory in this connection is to be found than in the following quotation from its brief: "Members of the Union who were not employees received no direct benefit from the contract. Employees of the defendant Company, regardless of Union membership, were benefited, particularly under the wage provisions."

In making this argument the defendant would have "the tail wag the dog". It ignores realities and would turn the decision on an "escape clause" in the contract allowing defendant to employ nonunion men "when qualified Union members are not available promptly", which serves only to emphasize the fact that the "union members" and "employees", as contemplated by the contracting parties, are one and the same. The contract provides that "the Company agrees to bargain and deal with the Union as the sole collective bargaining agency for *all employees* in its operations in New Mexico; office workers, superintendents and foremen to be ex-

cepted." (Emphasis ours.) But the contract further provides:

"(b) The Company agrees to employ *only* members in good standing of the Union. Provided, however, that non-union men may be employed when qualified Union members are not available promptly. (Emphasis ours.)

"(c) Such newly hired employees shall be subject to a probationary period of fifteen days, after which time *they shall become members of the Union.* They shall, however, obtain a working card from the Union representative before going to work, in conformity with the Union rules and regulations." (Emphasis ours.)

There was evidence that Local No. 2600 was chartered on June 26, 1939, following adoption of the amended wage scale on June 19, preceding, and that it "consists of the Breece employees in the planing mill at Alamogordo." It was already organized and the application for its charter was pending when the amended agreement was made on June 19. It was also in evidence that "Col. Breece wanted the men in the Alamogordo plant to join the Union and the reason he gave for that was that he was having trouble selling his lumber."

The trial judge was impressed by the identity for all practical purposes of employees and Union members. Commenting on this theory of the case, he said:

"The contract, Plaintiff's Exhibit 'A', provides that the company is only to employ members of the Union in good standing; and, assuming the contract to have become effective, the third party beneficiaries would necessarily, within the contemplation of the parties, be Union members employed by the company. By the very nature of the agreement, the beneficiaries were the members of the Union, and the Court sees little distinction between employees and members of the Union. Both attributes had to exist in order to be beneficiaries of this contract; that is, membership in the Union and employment by the company. So, the Court is of the opinion that any member of the Union, Local No. 2600, employed by the company, would be entitled to maintain a representative suit in behalf of all other Union employees; that is, of course, assuming that the agreement was applicable to Alamogordo."

It is suggested by defendant in its reply brief that to take this view of the matter represents a departure in theory from that presented by plaintiff in the trial court. Without passing upon this contention, it is enough to say it is a theory advanced by the trial judge himself in disposing of the matter, as indicated by his comment last quoted, against which no claim of surprise or other objection was made at the time.

Having concluded that the plaintiff has sufficient interest to permit him to maintain the suit and that those he represents are the direct and primary third party beneficiaries under the contract, whether viewed as "members of Local Union No. 2600" or as "employees", the right to maintain a representative suit under 1929 Comp. §

105-113, seems clear. The judgment of the trial court should therefore be affirmed and

It is so ordered.

BRICE, C. J., and ZINN, MABRY, and BICKLEY, JJ., concur.