133 P.2d 344

**FUQUA et al. v. TREGO et al.**

No. 4737.

Supreme Court of New Mexico.

Jan. 14, 1943.

Fred C. Stringfellow and John B. Tittmann, both of Raton, for intervener-appellant.

O. P. Easterwood, of Clayton, for J. H. Rankin, receiver-appellee.

MABRY, Justice.

Defendant, the City Drug Store of Clayton, New Mexico, operating as a partnership in which plaintiffs-appellees, Fuqua, Murphy and Trego, had an interest, became insolvent and upon petition of the said owners a receiver was appointed by the District Court of Union county on July 14, 1941. Thereafter under a second amended complaint filed on behalf of the said Fuqua and Murphy and against the said Wilbur Trego and Carmyne Trego, the plaintiffs under said amended complaint, claimed a separate indebtedness of $1,500 owing to each of the two from the said defendants, this being on account of a promissory note alleged to represent the purchase price of the stock, furniture, fixtures and business of the said drug store. The said plaintiffs likewise claimed a lien against any and all property of the said Wilbur Trego used in the operation of the said drug store. This second amended complaint prayed judgment against defendants for the amount alleged due upon the said note, for the appointment of a receiver, the foreclosure of the purchase money lien, the sale of the property to satisfy the lien, etc.

Intervener-appellant, Rhea R. Wanser, thereafter filed herein her petition in intervention purporting to set up three causes of action hereinafter to be more specifically referred to, and to this petition in intervention the receiver, one J. H. Rankin, and likewise plaintiffs, demurred. The demurrer was sustained, generally, and intervener Wanser appeals. For convenience the parties, appellees and appellant, will, at times, be hereinafter referred to as plaintiffs and intervener, respectively.

Intervener, in her amended petition in intervention to which the demurrer was directed, alleged that she had originally sold the furniture and fixtures used in said drug store to one Murphy, one of the plaintiffs, and one Markham, and had taken their promissory note upon which there was a balance due on the purchase price of said furniture and fixtures in the sum of $2,100; that at the time of said sale the said Murphy and Markham executed contracts agreeing to give said intervener a good and valid lien upon the said furniture and fixtures to secure the said balance upon the purchase price; that a note and chattel mortgage were so executed in behalf of intervener, but due to the "gross negligence or intentional fraud" of the said Murphy and Markham they failed to acknowledge said chattel mortgage so as to entitle it to be filed of record. Intervener alleges other facts and circumstances in support of her alleged reliance upon the said Markham and as an excuse and justification for not herself taking possession of and examining the said mortgage to ascertain whether it had been fully and completely executed in conformance with the said agreement by which she was so assured of a valid mortgage lien upon the chattels in question. Intervener, because of the said circumstances, claims an equitable lien upon the said chat-

tels under the agreement to give such a lien, upon the theory that equity considers that done which ought to be done. Wooley et al v. Shell Petroleum Corp. et al., 39 N.M. 256, 45 P.2d 927; Mutual Life Ins. Co. of New York v. Owen et al., 39 N.M. 421, 48 P.2d 1024. Is it fatal to intervener's lien, under the circumstances .here relied upon, that the chattel mortgage itself failed to create the lien which all parties understood and agreed was to result? We think not. Under the facts pleaded does an equitable lien exist which can be enforced nevertheless? We think so. Intervener questions the contention of appellees, and the legal conclusion arrived at by the trial court, to the effect that the contract providing for such a lien became merged in the mortgage thereafter given, notwithstanding it was, of itself, ineffectual to create the lien, since the receiver so taking without notice of her claim of lien held free of such claim.

The petition further alleges that after the said purchase from intervener the said Markham sold his interest in the drug store and business to plaintiff Fuqua, and that the said Fuqua, for a separate and independent consideration, then and there assumed and agreed to pay this indebtedness owing by Markham and Murphy to intervener Wanser, and that he has now likewise become obligated to pay said indebtedness; that subsequent to the last aforementioned transaction, the said Wilbur Trego purchased the said drug store from plaintiffs Fuqua and Murphy, and as a part of the consideration therefor himself agreed to assume and pay all indebtedness of said business including the said $2,100 due intervener; that thus both the said Fuqua and Trego came into the picture as guarantors of the said indebtedness owing intervener, and, for a consideration, themselves assumed and agreed to pay it.

For her second cause of action and by her second count, intervener alleges that the said Murphy is indebted to her in the sum of $2,399.75, with interest, on account of a judgment theretofore recovered by her against him in another action in the District Court of Union county; and she asks that anything found owing to the said Murphy in the suit herein be impounded by the court and held by the receiver for the purpose of satisfying such judgment. Insolvency on the part of Murphy and other necessary facts were alleged as a basis for the alleged right to so tie up and impound, for her benefit, anything found owing the said Murphy.

In the third count of her petition intervener alleges again that she sold the furniture and fixtures used in the said drug store to the said Markham and Murphy and that there is a balance due on the purchase price in the sum of $2,100 as evidenced by a promissory note; that plaintiff Fuqua thereafter bought the interest of the said Markham, and as a part of the consideration therefor, assumed and agreed to pay all outstanding indebtedness owing by said business including that owing to intervener.

Intervener further shows that she thereafter, but prior to filing the within suit, filed suit upon such note against the said Fuqua

in a separate action in the District Court of Union county, to which was interposed to her complaint, and overruled by the court, a demurrer; and that the said Fuqua appealed from the order so overruling, to this court; that said cause is still pending and undecided, for which reason intervener has not been able to prosecute her said suit to judgment and has thereby exhausted her present and immediate remedy at law against the said Fuqua in that particular suit; that the said Fuqua is wholly insolvent excepting as to any interest in the drug store property, now in the hands of a receiver, that may be found owing to him at the conclusion of the within suit.

The demurrer was directed separately to each of the three counts of the petition. Numerous objections are urged to the petition. Although the demurrer contains numerous separate paragraphs, with some of these being further divided into sub-paragraphs, as we understand it, the objections sought to be raised to the petition are substantially as follows: (a) that the matters pleaded and relied upon in said count have heretofore been adjudicated by the court in another action; (b) that the transactions so set out, and as they relate to the purchase and sale as between the various parties, plaintiffs and defendant, violate the New Mexico Bulk Sales law, which would deny intervener her remedy; (c) that the execution of the chattel mortgage, incomplete and ineffectual though it be to create a lien because not acknowledged, having absorbed by merger the prior contract between the parties concerned to give such a mortgage lien, no such lien can now be relied upon; (d) that intervener has elected her remedy in a prior action and has proceeded on the note against Murphy, omitting to ask for the foreclosure of any equitable lien created by the contract executed prior to the execution and delivery of the said chattel mortgage; (e) that there is no privity of contract between the said intervener on the one side and either the said Fuqua or Trego on the other, and the petition, therefore, does not state a cause of action.

There is no merit to any of the points urged by plaintiffs' demurrer. The intervener alleges she is the owner of a note executed by Murphy upon which the sum of $2,100, with interest, is unpaid, and that plaintiffs Fuqua and Trego, each, for a good and valid consideration, assumed and agreed to pay the indebtedness evidenced thereby. That certainly is an allegation sufficient to withstand a demurrer. Privity of contract did exist.

It is a well settled principle of law that one will be bound by an agreement supported by consideration, to assume and pay the debts of another and that this is enforceable by creditors who are third party beneficiaries. See Southwestern Portland Cement Co. v. Williams, 32 N.M. 68, 251 P. 380, 49 A.L.R. 525; Key v. Breece Lumber Co., 45 N.M. 397, 115 P.2d 622; Johnson v. Armstrong & Armstrong, 41 N.M. 206, 66 P.2d 992. See Annotations in 81 A.L.R. 1271.

It does not become important as it relates to our appraisement of the demur-

40

rer, whether the Bulk Sales law was in fact violated, as charged. Such a question cannot be raised in this manner. Ordinarily, only the creditors of a seller may attack a sale as violating the Bulk Sales law, Comp.St.1929, § 119-101 et seq. 53 C.J. 559; Longfellow v. Barnard, 58 Neb. 612, 79 N.W. 255, 76 Am.St.Rep. 117.

 The facts alleged in the petition, if established by evidence, would be sufficient to create a valid and enforceable equitable lien upon the property in the hands of the receiver for the amount of intervener's claim. Plaintiffs would not dispute this proposition, probably, except for the reason that they rely upon the law of merger as having nullified all force and effect of the agreement to give intervener a chattel mortgage carrying a lien. Plaintiffs mistake the applicability of the rule of merger, as well as that pertaining to equitable mortgages. An agreement founded on a valuable consideration to give a mortgage lien on a chattel constitutes an equitable mortgage lien. That is a rule of universal application. Van Sickle v. Keck, 42 N.M. 450, 81 P.2d 707; 5 R.C.L., Chattel Mortgages, § 10; 17 R.C.L., Liens, § 13; 37 C.J., Liens, § 18, 19. Of course, no intervening interest of third persons will be affected by such equitable mortgage subsequently adjudged to exist. However, all parties to this controversy had notice of intervener's claim and the understanding that she had a valid lien, according to the petition. The appointment of a receiver is in the nature of an equitable execution. By it the court is able to reach only the ac-

tual interest of the debtor in the property—the interest which the creditors themselves could reach with an execution issued on a judgment of law in their favor. Longfellow v. Barnard, 58 Neb. 612, 79 N.W. 255, 76 Am.St.Rep. 117.

 Generally speaking, all previous stipulations are merged in the final and formal contract executed by the parties, and this applies to a deed or mortgage based upon a contract to convey (Norment et ux. v. Turley et al, 24 N.M. 526, 174 P. 999); and all previous contemporaneous oral negotiations concerning the subject matter likewise merge in the valid written contract. But the doctrine of merger could not apply where the second or final contract is incomplete or invalid.

 There must be a subsequent valid legal existing contract to effect merger, and there was none. We have a right to assume, under the facts pleaded, that intervener Wanser was not interested in, and did not intend to receive, any mortgage not properly executed in a manner entitling it to record so as to give notice and provide a good and valid lien as her security. Absent this kind of a mortgage, one which would give such notice and security, there is no merger. The complete terms of this contract to give such security and lien were not fully carried out and completed by the subsequent chattel mortgage, it is alleged. And, likewise, there could be no merger unless the subsequent instrument, the chattel mortgage, be free from fraud and mistake, which, it is alleged, it was not. See

Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P.2d 377, 381.

■■■■ Both fraud and mistake are charged by intervener to the other parties to the contract. Thus, it cannot be said that this is an attempt to vary or contradict the terms or provisions of the second contract, or chattel mortgage, but it must be said, rather, that intervener is seeking to have the first contract carried out. The agreement to give a mortgage lien, coupled with this abortive effort which failed through absence of the statutory acknowledgement, constitutes an equitable lien which is enforceable. To hold this an enforceable equitable lien does no violence to the rule well understood and generally followed, that, in the absence of fraud or mistake, the contract of purchase is merged in the deed. In the case of Continental Life Ins. Co. v. Smith, supra, speaking through Mr. Justice Brice, we used this language:

"In the absence of fraud, mistake, etc., the following stipulations in contracts for the sale of real estate are conclusively presumed to be merged in a subsequently delivered and accepted deed made in pursuance of such contract, to wit: (1) Those that inhere in the very subject-matter of the deed, such as title, possession, emblements, etc.; (2) those carried into the deed and of the same effect; (3) those of which the subject-matter conflicts with the same subject-matter in the deed. In such cases, the deed alone must be looked to in determining the rights of the parties."

There should always be the reservation against fraud and mistake, as mentioned in the first line of the above quotation. Complete merger cannot be relied upon under the circumstances of this case.

■■■■ With reference to the quite important question whether intervener made an election and litigated the issues with reference to the chattel mortgage in another suit: this is a matter which cannot be raised by demurrer; the facts, as they are stated in the petition, cannot be successfully challenged by demurrer. The plea of election of remedies, under the circumstances, must be raised by answer. See Williams v. Selby, 37 N.M. 474, 24 P.2d 728, 729; 20 C.J., § 32, on Election of Remedies; 28 C.J.S., Election of Remedies, § 28. We said in the case of Williams v. Selby, supra, quoting, in substance, from 9 R.C.L. 958, "The doctrine of election of remedies applies only where there are two or more remedies, all of which exist at the time of the election, and which are alternative and inconsistent with each other, and not cumulative, so that, after the proper choice of one, the other or others are no longer available." We know, also, and we have held, that a party may sue upon a note and yet not suffer impairment of his right to foreclose a lien securing the indebtedness in another action. Porter v. Alamocitos Land & Livestock Co., 32 N.M. 344, 256 P. 179.

■■■■ That portion of the demurrer raising the question of intervener having elected her remedy and litigated in another court

one cause of action relied upon is a' speaking demurrer, since the petition in intervention does not affirmatively show the nature of the earlier suit referred to and the question of election could not be raised, under the scant facts pleaded, by demurrer.

 The demurrer here occasionally employs argument or statements intended to supplement the petition with additional facts. This, of course, cannot be done. The petition is tested solely and only by the facts well pleaded. A speaking demurrer should be overruled. Dodrill v. State Bank of Alamogordo, 35 N.M. 342, 297 P. 144.

 The demurrer likewise is directed to the second count of the petition which attempts to state a cause of action by way of a creditor's suit against the interest of plaintiff Murphy. It was an error to sustain the demurrer upon this point. Here intervener sought to state a cause of action by way of creditor's suit against the interest of plaintiff Murphy in and to all property in the possession of the receiver. The remedy by creditor's suit is universally recognized, and certainly in New Mexico. See Early Times Distillery Co.. v. Zeiger, 9 N.M. 31, 49 P. 723; Stanton v. Catron, 8 N.M. 355, 45 P. 884. We hold that the petition alleges facts sufficient to impress a lien upon the interest of plaintiff Murphy in the property in the possession of the court. The general rule may be stated to be as laid down in 21 C.J.S., Creditors' Suits, § 58, to wit:

"Where funds of a debtor are in the hands of a court of equity, a judgment creditor may file an intervening petition to have such funds applied to his judgment, and is not bound to resort to independent proceedings in equity unless he so chooses."

This rule is particularly applicable where the debtor is alleged to be insolvent (Talladega Merc. Co. v. Jenifer Iron Co., 102 Ala. 259, 14 So. 743,) and the right is not confined to creditors whose claims have been reduced to judgment. Merchants' National Bank v. McDonald, 63 Neb. 363, 88 N.W. 492, 89 N.W. 770.

Other points raised and discussed are not necessary to a decision and will not be noticed. The demurrer should have been overruled and plaintiffs should' have been required to answer or otherwise plead further. For the reasons stated, the cause will be reversed, with the directions to the trial court to set aside its order heretofore made and entered, and to make and enter its order overruling the demurrer and to permit the parties to proceed in a manner not inconsistent with this opinion, and, it is so ordered.

SADLER, BICKLEY, and BRICE, JJ., concur.

ZINN, C. J., being absent, did not participate.